EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Berardo A. Quílez-Velar; Marta Bonelli-Cabán; Berardo Quílez Bonelli; Carlos A. Quílez Bonelli<br><br>Peticionarios<br><br>v.<br><br>Ox Bodies, Inc.<br><br>Recurrido | 2017 TSPR 165<br><br>198 \_\_\_\_ |

Número del Caso: CT-2016-10

Fecha: 31 de agosto de 2017

Certificación proveniente de la Corte de Apelaciones de Estados Unidos para el Primer Circuito.

Abogados de los Peticionarios:

    Lcdo. José Luis Ubarri García
    Lcdo. David W. Román Rodríguez
    Lcdo. Luis R. Mena Ramos

Abogados de los Recurridos:

    Lcdo. Francisco J. Colón Pagán
    Lcdo. Francisco E. Colón Ramírez

Materia: Responsabilidad civil extracontractual - Deudor solidario puede valerse del límite de responsabilidad estatutaria que cobija a un municipio codeudor, en la porción de la deuda que sea atribuible a ese municipio.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Berardo A. Quílez-Velar; Marta Bonelli-Cabán; Berardo Quílez-Bonelli; Carlos A. Quílez Bonelli<br><br>Peticionarios<br><br>v.<br><br>Ox Bodies, Inc.<br><br>Recurrido | **Núm.** CT-2016-0010 |
| --- | --- |

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 31 de agosto de 2017

Tenemos ante nuestra consideración una pregunta certificada de la Corte de Apelaciones de Estados Unidos para el Primer Circuito. Ésta nos permite analizar el efecto que tiene el límite de responsabilidad que cobija a un municipio sobre su codeudor solidario en una acción de daños y perjuicios. Por considerar que la pregunta certificada presenta una controversia novel de derecho puertorriqueño, sin cuya dilucidación el tribunal federal se vería impedido de disponer del caso, procedemos a contestarla.

**I.**

**A.**

Los hechos del presente caso se remontan al 1 de octubre de 2010. Aquel día, la Sra. Maribel Quílez Bonelli, madre de 28 años conducía su vehículo en el

carril de la extrema izquierda en la Avenida Román Baldorioty de Castro, cuando impactó un camión perteneciente al Municipio de San Juan. El camión estaba equipado con un parachoques trasero diseñado por la compañía Ox Bodies. No obstante, al momento del impacto, la parte trasera del camión penetró la cabina del vehículo de la señora Quílez Bonelli, ocasionándole serias heridas. Posteriormente, la señora Quílez Bonelli falleció a causa del accidente.

A razón de la tragedia acaecida, el Sr. Berardo Quílez Velar, la Sra. Marta Bonelli Cabán, el Sr. Berardo Quílez Bonelli y el Sr. Carlos Quílez Bonelli, padres y hermanos de la señora Quílez Bonelli (en adelante, "los demandantes"), presentaron una demanda sobre daños y perjuicios en los foros federales y estatales.

En el Tribunal de Primera Instancia, los demandantes presentaron una demanda enmendada el 1 de noviembre de 2011 en la cual alegaron negligencia y nombraron como demandados al Estado Libre Asociado, la Autoridad de Carreteras y Transportación, el Municipio de San Juan (en adelante "el Municipio") y su aseguradora, Integrand Assurance Company (en adelante "Assurance"). Así las cosas, el 16 de mayo de 2014, Assurance consignó $500,000 en el Tribunal de Primera Instancia, cantidad que representaba el tope del seguro de responsabilidad del Municipio. Posteriormente, el foro de instancia ordenó que

los fondos consignados se les entregaran a los demandantes y desestimó la demanda en cuanto al Municipio.

Por otro lado, en el foro federal, los demandantes habían presentado una demanda enmendada el 20 de marzo de 2013 en contra de Ox Bodies debido al diseño defectuoso del parachoques trasero del camión. Luego, Ox Bodies y su compañía matriz presentaron una demanda contra tercero en contra del Municipio de San Juan. El 16 de mayo de 2014, el mismo día que se llevó a cabo la consignación de fondos en el tribunal estatal, el Municipio le informó a la corte federal de la consignación. Consecuentemente, la corte federal desestimó la demanda en cuanto al Municipio el 4 de septiembre de 2014, sin objeción alguna de Ox Bodies. Celebrado el juicio, el jurado concluyó que Ox Bodies respondía a los demandantes bajo una teoría de responsabilidad absoluta debido al diseño defectuoso del parachoques trasero y otorgó daños que totalizaron $6,000,000. Además, el jurado adjudicó la responsabilidad por los daños de la siguiente manera: le atribuyó 20% de la responsabilidad a Ox Bodies, 80% al Municipio (que ya no formaba parte de la demanda) y 0% a la señora Quílez Bonelli.

En atención a ello, la magistrada Silvia Carreño Coll determinó que Ox Bodies sólo debía compensar los daños por los cuales era directamente responsable, entiéndase, 20% del total, que equivalía $1,200,000. La magistrada resolvió que puesto que el Municipio estaba cobijado por

un límite de responsabilidad y éste ya había alcanzado dicho límite mediante la consignación de fondos en el foro estatal, Ox Bodies no tenía derecho de nivelar contra el Municipio. A la vez, la magistrada Carreño Coll razonó que si un demandado solidario pierde su derecho de nivelación contra su codeudor debido a la inmunidad o limitación de responsabilidad estatutaria de este último, éste sólo debería responder frente al demandante en proporción a su responsabilidad. Para llegar a esa conclusión, trazó una analogía con nuestra jurisprudencia de nivelación contra el patrono en casos de daños presentados por el obrero contra un tercero.[1] Por lo tanto, concluyó que Ox Bodies no respondería por el 80% de responsabilidad adjudicada al Municipio de San Juan.

Inconforme con la determinación, los demandantes acudieron en apelación a la Corte de Apelaciones de Estados Unidos para el Primer Circuito. Éstos arguyen que aunque Ox Bodies no pueda nivelar contra el Municipio, sigue siendo un deudor solidario del total de los daños

---

[1] La argumentación analógica en el campo del Derecho —forma inductiva de argumentar— es una herramienta indispensable en la aplicación del Derecho. La analogía le permite a una parte o a un magistrado sostener que un asunto debe atenderse/resolverse de cierta manera porque hay otro —semejante al primero **en lo esencial**— que se atendió/resolvió de esa manera. De esta forma, el principio legal o la norma que se aplicó en la primera situación se aplicará igual a la segunda, en virtud de las similitudes esenciales o materiales entre ambos casos. Ruggero J. Aldisert, *Logic for Lawyers*, cap. 6 (1989). La analogía permite razonar a base de ejemplos y opera solamente cuando existe un vacío legal respecto a la controversia planteada en un caso. *Véase Orraca López v. ELA*, 192 DPR 31 (2014).

otorgados, entiéndase, $6,000,000. Por lo tanto, tiene la responsabilidad de pagar la totalidad de la cuantía. La Corte de Apelaciones consideró que la controversia presentaba una interrogante importante del Derecho de daños de Puerto Rico y, consecuentemente, nos certificó la siguiente pregunta:

> ¿Fue correcto el dictamen de la magistrada de limitar los daños otorgados contra Ox Bodies a $1,200,000 y negarle a los Quílez los daños solidarios otorgados por el jurado, ascendientes a $6,000,000? (traducción nuestra)[2]

## II.

### A.

El auto de certificación interjurisdiccional permite que los tribunales federales y los tribunales supremos de los diversos estados de Estados Unidos de América nos presenten preguntas del Derecho puertorriqueño cuya contestación puede determinar el resultado de un asunto judicial ante el tribunal solicitante. *Véase Muñiz-Olivari v. Stiefel Labs.*, 174 DPR 813, 817 (2008).

Como reza la regla que lo permite, el auto de certificación interjurisdiccional tiene dos requisitos, a saber: que la pregunta certificada pueda determinar el resultado del asunto judicial y para la cual no existan precedentes claros en nuestra jurisprudencia. 4 LPRA sec.

---

[2] La pregunta certificada, en el idioma original, lee:
Was the magistrate judge correct in this case to limit the damages award against Ox Bodies to $1,200,000 and deny Quilez a joint and several damages award of $6,000,000 against Ox Bodies?

24s (g). En el pasado, hemos rechazado contestar una pregunta certificada si la corte federal podría ignorar nuestra respuesta y resolver la misma controversia bajo fundamentos federales distintos a los nuestros. *Véase Pan American Computer Corp. v. Data General Corp.*, 112 DPR 780 (1982). Ello, ya que en ese supuesto, nuestra decisión se tornaría consultiva. *Id*. en la pág. 794.

En el caso de autos, nuestra respuesta a la pregunta certificada pondría fin al asunto judicial ante la Corte de Apelaciones y no hay precedente en nuestra jurisprudencia que atienda el caso puntualmente. Así las cosas, estamos en posición de considerar el auto de certificación presentado.

**B.**

Las obligaciones con una multitud de deudores pueden ser de naturaleza mancomunada o solidaria. Mientras que en la obligación mancomunada cada deudor cumple con su parte de la deuda de manera independiente, en la obligación solidaria cada deudor tiene el deber de satisfacer la totalidad del crédito que ostenta el acreedor. 31 LPRA sec. 3101; *véase Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 375 (2012); *véase además* Eduardo Vázquez Bote, *Tratado teórico, práctico y crítico de Derecho privado puertorriqueño* t. V, pág. 136 (1991). A su vez, en las obligaciones solidarias, el deudor solidario que pague la totalidad de la deuda puede luego reclamar de sus codeudores la parte que a cada uno corresponda, mediante

una acción de nivelación. 31 LPRA sec. 1098; *véase García v. Gobierno de la Capital*, 72 DPR 138 (1951).

Ahora bien, en nuestro ordenamiento, el art. 1090 del Código Civil establece una presunción de mancomunidad, salvo pacto expreso al contrario. 31 LPRA sec. 3101. Sin embargo, jurisprudencialmente, rechazamos extender la presunción de mancomunidad al campo de la responsabilidad civil extracontractual, en aras de proteger al damnificado. Así, en una acción sobre daños extracontractuales, cualquiera de los cocausantes del daño es responsable de pagar la totalidad de éste. *Véase Maldonado Rivera v. Suárez*, 195 DPR 182, 195-96 (2016).

Como mencionamos, en las obligaciones solidarias, cada deudor está obligado a responder por la totalidad de la deuda. Asimismo, para recobrar su acreencia, el acreedor puede dirigirse contra cualquiera de los deudores solidarios o contra todos simultáneamente. *Véase* 31 LPRA sec. 3108. No obstante, en el caso de autos, el codeudor solidario es un municipio, protegido por un límite de responsabilidad establecido en la Ley de Municipios Autónomos. 21 LPRA sec. 4704. Ya que el Municipio de San Juan está asegurado, el límite de responsabilidad estatutaria aplicable es "el grado de la indemnización cobrable real y efectivamente provista por dicho seguro en cuanto a un suceso en particular". 26 LPRA sec. 2004. Por ello, los demandantes se verían impedidos de recobrar de

éste más de lo permitido por el límite de responsabilidad, entiéndase, el tope del seguro del Municipio.

Resta por considerar si al codeudor solidario de un municipio se le puede exigir la totalidad de la deuda, independientemente de si la cantidad de la deuda que le corresponde al municipio excede el límite de responsabilidad que protege a este último.

**C.**

Hemos tenido más de una oportunidad de analizar la consecuencia de un deudor cobijado por inmunidad estatutaria sobre su codeudor solidario.

En el contexto de inmunidad patronal por accidentes en el trabajo, resolvimos la interrogante hace más de cincuenta años. En *Cortijo Walker v. AFF*, 91 DPR 574 (1964), la demandada intentó instar una demanda en contra de tercero para responsabilizar al patrono del demandante por el daño sufrido. Ello, pese a que el daño del demandante ocurrió en el lugar de trabajo y, por lo tanto, el patrono era inmune ante una reclamación directa del obrero debido a la Ley de Compensaciones por Accidentes del Trabajo. En esa ocasión, concluimos que la "inmunidad estatutaria no puede disolverse a través del medio indirecto de la demanda de tercero". *Id.* en la pág. 582. Por lo tanto, de resolverse finalmente que el patrono era responsable por una porción de los daños, la demandada no hubiera podido ejercer una acción de nivelación en su contra para recobrar lo que ésta pagó en exceso.

Posteriormente, ante una situación de hechos similar a *Cortijo Walker*, concluimos que el patrono, a quien intentaban traer como tercero demandado, "n[o] respondería de manera indirecta como un tercero demandado, ni podría la demandada resarcirse luego del patrono como un colaborador con ella del daño". *Viuda de Andino v. AFF*, 93 DPR 170, 181 (1966). Empero, en *Viuda de Andino* fuimos más allá, e indicamos que debido a la inmunidad del patrono colaborador del daño, la demandada únicamente tenía la obligación de resarcir el daño "en proporción a su propia culpa y al grado en que colaboró a producirl[a]". *Id.* en la pág. 182. Dicha norma la reiteramos un año después en *Rosario Crespo v. AFF*, 94 DPR 834, 849 (1967).

Asimismo, hemos llegado a una conclusión afín con relación a la inmunidad interfamiliar en el campo de la responsabilidad civil extracontractual que establece el Código Civil en el art. 1810A. *Véase* 31 LPRA sec. 5150. Luego de vacilar por unas décadas en cuanto a la normativa aplicable en estos casos,[3] en *Colón Santos v. Coop. Seg. Múlt. PR* concluimos de manera definitiva que:

> [E]n un caso donde un menor sufre daños en parte a causa de la culpa o negligencia de un miembro de su círculo familiar íntimo, procede descontar la proporción de negligencia de dicho familiar del monto total de los daños adjudicados a favor de la parte demandante, independientemente de

_____

[3] Véase Miranda v. ELA, 137 DPR 700 (1994); Molina, Caro v. Dávila, 121 DPR 362 (1988); Ramos Acosta v. Caparra Dairy, 113 DPR 357 (1982); Torres Pérez v. Medina Torres, 113 DPR 72 (1982); Quintana Martínez v. Valentín, 99 DPR 255 (1970).

> que implique disminuir la indemnización del menor que sufrió los daños. *Colón Santos v. Coop. Seg. Múlt. PR*, 173 DPR 170, 184 (2008).

Resolvimos así pues dicha solución evita una posterior acción de nivelación contra el miembro de familia cocausante del daño que socavaría por completo la protección conferida mediante la inmunidad estatutaria. *Véase id*. Como ha comentado el Profesor Álvarez González, la solución a la cual llegamos en *Colón Santos* fue "correcta y justiciera", pues evita "el equivalente funcional de una demanda entre miembros del núcleo familiar por los daños sufridos por uno de ellos". José J. Álvarez González, *Responsabilidad Civil Extracontractual*, 78 Rev. Jur. UPR 457, 467-68 (2009).[4]

En primer lugar, en los casos reseñados, impedimos que un demandado ejerciera una acción de nivelación contra un cocausante inmune estatutariamente. Como ya indicamos, permitir una acción de nivelación en ese supuesto socavaría, en términos prácticos, la inmunidad conferida por ley al cocausante del daño. Eso sería inaceptable, pues implicaría pasar por alto las fuertes consideraciones

---

[4] Por su parte, el profesor Bernabe Riefkohl ha comentado que la solución correcta sería impedir una acción de nivelación contra el familiar inmune, pero requerirle al demandado que pague la totalidad de los daños otorgados. *Véase* Alberto Bernabe Riefkohl, *Colón Santos v. Cooperativa de Seguros Múltiples y el aparente conflicto entre las doctrinas de la solidaridad y la inmunidad*, 79 Rev. Jur UPR 1091 (2010). Sin embargo, esa propuesta nos parece desacertada, en tanto permite que el demandante evada la inmunidad estatutaria de un cocausante del daño dirigiéndose contra otro cocausante.

de política pública que llevaron al legislador a conferirle inmunidad a determinada persona.

En segundo lugar, rechazamos imputarle a un codeudor solidario la responsabilidad de pagar por la porción de los daños atribuible a un codeudor cobijado por una inmunidad estatutaria. Si un codeudor es inmune por razón de una ley que así lo prescribe, su porción de la deuda no debe formar parte de la deuda solidaria. Asimismo, si un codeudor está cobijado por un límite de responsabilidad estipulado por la ley, como en el caso de autos, pues su porción de la deuda no puede rebasarse del límite establecido.

Por último, es menester señalar que la lógica que subyace todos estos casos está explícitamente enmarcada en nuestro Código Civil. El art. 1101 señala las excepciones que puede hacer el deudor solidario contra la reclamación del acreedor. La jurisprudencia que adoptó la regla de solidaridad para casos de responsabilidad civil extracontractual nunca discutió este artículo; sin embargo, éste es parte esencial de la teoría de las obligaciones solidarias. El referido artículo nos indica:

> El deudor solidario podrá utilizar contra las reclamaciones del acreedor todas las excepciones que se deriven de la naturaleza de la obligación y las que le sean personales. De las que personalmente correspondan a los demás, sólo podrá servirse en la parte de deuda de que éstos fueren responsables. 31 LPRA sec. 3112.

Como explica el tratadista Gómez Ligüerre en cuanto al art. 1148 del Código Civil español, análogo a nuestro art. 1101, la frase "parte de deuda se refiere a la relación interna [entre los deudores] y, en contra de la finalidad a la que responde la solidaridad pasiva, se permite a uno de los codeudores que oponga al acreedor excepciones que ni le son propias ni proceden de la obligación". Carlos Gómez Ligüerre, *Solidaridad y Derecho de daños: Los límites de la responsabilidad colectiva* 69 (2007). Como razona José Puig Brutau:

> [S]e trata, por supuesto, de una regulación orientada por criterios de política pública, en lugar de ser derivación inflexible de la naturaleza de la obligación solidaria. Además, si no estuviese así establecido, el acreedor podría evitar la eficacia de las excepciones personales de algunos deudores a base de dirigirse contra cualquiera de los demás obligados. José Puig Brutau, *Fundamentos de Derecho Civil,* t. I, v. II, págs. 170-71 (3ra ed., 1985).

A manera de ejemplo, Vázquez Bote nos ilustra que "el acreedor que pactó con un menor podría eludir el régimen especial de anulabilidad, reclamando a los restantes deudores. . . y el deudor a quien se reclama el pago puede oponerse a satisfacer la proporción del menor, precisamente por ser éste menor". Eduardo Vázquez Bote, *Tratado teórico, práctico y crítico de Derecho privado puertorriqueño,* t. V, pág. 146 (1991).

Si bien los casos discutidos nunca mencionan este artículo, en la práctica aplicaron su postulado al pie de

la letra. Las inmunidades o límites de responsabilidad que se establecen por ley son excepciones, o defensas, personales que puede presentar un deudor. Así, un deudor puede servirse de la inmunidad o límite de responsabilidad estatutaria de otro codeudor en la porción de la deuda de la cual sea responsable ese otro. Por lo tanto, hoy resolvemos que un deudor solidario puede valerse del límite de responsabilidad estatutaria que cobija a un municipio codeudor, en la porción de la deuda que sea atribuible a ese municipio.

## III.

En el caso de autos, debido al límite de responsabilidad establecido por ley, los demandantes sólo podían recuperar del Municipio de San Juan hasta $500,000, el tope de la indemnización cobrable real y efectivamente provista por el seguro del Municipio. Por lo tanto, ante los demandantes, el Municipio de San Juan ostentaba una defensa personal de límite de responsabilidad estatutaria. Ahora bien, la cantidad de $500,000 ya había sido consignada en el Tribunal de Primera Instancia, por lo cual los demandantes no podían recuperar dinero adicional del Municipio en el foro federal, razón por la cual el Municipio fue desestimado del pleito. En cuanto al codeudor solidario permaneciente en el pleito, Ox Bodies, éste podía oponer la defensa personal del Municipio en la parte de la deuda que el Municipio fuere responsable, entiéndase, ochenta por ciento (80%). Así lo hizo. Por lo

tanto la magistrado Carreño Coll hizo lo correcto al limitar la responsabilidad final de Ox Bodies a $1,200,000, equivalente al veinte por ciento (20%) de los daños otorgados por el jurado.

Se dictará sentencia de conformidad.


                                        Anabelle Rodríguez Rodríguez
                                               Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Berardo A. Quílez-Velar; Marta Bonelli-Cabán; Berardo Quílez-Bonelli; Carlos A. Quílez Bonelli<br><br>    Peticionarios<br><br>        v.<br><br>Ox Bodies, Inc.<br><br>    Recurrido | **Núm.**<u>CT-2016-0010</u> | |

SENTENCIA

San Juan, Puerto Rico, a 31 de agosto de 2017

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, resolvemos que la magistrado Carreño Coll hizo lo correcto al limitar la responsabilidad final de Ox Bodies a $1,200,000, equivalente al veinte por ciento (20%) de los daños otorgados por el jurado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no intervino. El Juez Asociado señor Estrella Martínez emitió Opinión de Conformidad.


                    Juan Ernesto Dávila Rivera
                Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Berardo A. Quílez-Velar;
Martha Bonelli-Cabán
Berardo Quílez-Bonelli;
Carlos A. Quílez Bonelli

    Peticionarios

     v.                      CT-2016-0010      Certificación

Ox Bodies, Inc.

    Recurridos

Opinión de conformidad emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 31 de agosto de 2017.

Estoy conforme con la determinación emitida por este Tribunal de concluir que debido al límite de responsabilidad establecido por la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, _infra_, un codeudor solidario de un municipio en un caso de daños y perjuicios puede presentar tal defensa y valerse del límite en la porción de la deuda que sea atribuible a ese municipio. Sin embargo, ante el vacío jurisprudencial que existe en cuanto a la aplicación del artículo 1101 del Código Civil, _infra_, considero adecuado abundar en torno a sus efectos.

Con ello en mente, procedo a exponer el trasfondo fáctico y procesal que originó la controversia ante nos.

I

El 1 de octubre de 2010, la Sra. Maribel Quílez Bonelli (señora Quílez Bonelli) conducía un vehículo de motor junto a su hijo menor de edad como pasajero. En su trayectoria, impactó un camión que pertenecía al Municipio de San Juan (Municipio), el cual estaba detenido. El camión tenía, en su parte trasera, un parachoques diseñado por la compañía Ox Bodies, Inc. (Ox Bodies). Al ocurrir el impacto, el parachoques penetró la cabina del vehículo. Cinco días después, la señora Quílez Bonelli falleció debido a las heridas resultantes del accidente.

A raíz de estos eventos, los familiares de la señora Quílez Bonelli (demandantes) presentaron demandas de daños y perjuicios tanto en el foro estatal como en el federal. Particularmente, en el Tribunal de Primera Instancia demandaron al Estado Libre Asociado de Puerto Rico, la Autoridad de Carreteras y Transportación, el Municipio y su aseguradora. Por su parte, el Municipio demandó como tercero a Ox Bodies. Asimismo, los demandantes demandaron a Ox Bodies en la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico (Corte de Distrito), al existir diversidad de ciudadanía, quien a su vez trajo como terceros demandados al Municipio y a su aseguradora.

Así las cosas, los demandantes transigieron y acordaron con el Municipio en el Tribunal de Primera Instancia que su aseguradora consignaría el tope de la póliza de su cubierta pública, es decir, $500,000. La cantidad depositada debía ser distribuida entre los demandantes en el caso de que se le atribuyera responsabilidad al Municipio. Conforme a este acuerdo, se desestimó la demanda estatal en cuanto al Municipio y su aseguradora, y al tercer demandado, Ox Bodies. Al notificarle a la Corte de Distrito sobre la consignación en el foro estatal, se desestimó la demanda federal en contra del Municipio. No obstante, permaneció la acción en contra de Ox Bodies.

En el foro federal, el jurado otorgó $6,000,000 en daños, los cuales distribuyó de la siguiente manera: 80% de la responsabilidad al Municipio y 20% de la responsabilidad a Ox Bodies. A pesar de ser un codeudor solidario, la Corte de Distrito determinó que Ox Bodies sólo debía responder por el 20% de la cuantía otorgada, es decir, $1,200,000. El referido foro destacó que, debido al límite de responsabilidad que cobija al Municipio, Ox Bodies estaba privado de su derecho a nivelar contra éste. En consecuencia, resolvió que Ox Bodies sólo estaba obligado a indemnizar los daños que causó directamente. Para sustentar su determinación, hizo una analogía entre la responsabilidad limitada de los

municipios y la inmunidad patronal en las reclamaciones de daños y perjuicios.

Inconformes, los demandantes acudieron a la Corte de Apelaciones de Estados Unidos para el Primer Circuito (Corte de Apelaciones). En esencia, arguyeron que Ox Bodies, como todo codeudor solidario, era responsable por la totalidad de la deuda ante el acreedor. Asimismo, argumentaron que la relación interna entre los codeudores no debe afectar los daños que se les otorgaron a los demandantes.[5] Por otro lado, Ox Bodies sostuvo que no se le debe responsabilizar por la totalidad de los daños, ya que no tiene derecho a nivelar en contra del Municipio.

La Corte de Apelaciones consideró que la controversia no contaba con precedente en el Derecho puertorriqueño, por lo cual presentó una certificación interjurisdiccional con la siguiente pregunta:

> ¿Fue correcto el dictamen de la magistrada de limitar los daños otorgados a los Quílez-Velar a $1,200,000, que corresponde al porcentaje de responsabilidad de Ox Bodies, y negarle los daños solidarios determinados por el jurado, ascendientes a $6,000,000?

Examinada la situación fáctica, procedemos a exponer el marco jurídico aplicable a la controversia ante nuestra consideración.

---

[5] Nótese que no está ante nuestra consideración un cuestionamiento a la constitucionalidad de la acción de legislar límites de responsabilidad a entidades públicas.

## II

Los municipios autónomos de Puerto Rico gozan de un límite de responsabilidad en casos de daños y perjuicios. La Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico (Ley de Municipios Autónomos) precisa que éstos responden por un máximo de $75,000 por persona, o de $150,000 cuando los daños se le ocasionen a más de una persona o cuando sean varias causas de acción. Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 LPRA sec. 4704. Sin embargo, cuando un municipio obtiene un seguro de responsabilidad, éste responderá hasta el tope de la cubierta. Cód. de Seguros de Puerto Rico, 26 LPRA sec. 2004.

Recientemente, definimos el término de límite de responsabilidad. Indicamos que se refiere a "una limitación impuesta por la Asamblea Legislativa a las cuantías compensables por actos u omisiones culposos o negligentes". Rodríguez Figueroa v. Centro de Salud Mario Canales Torresola, res. el 12 de abril de 2017, 2017 TSPR 53, pág. 4. Es decir, explicamos que en el caso de la responsabilidad limitada existe una causa de acción, pero la indemnización por los daños sufridos será limitada. En consecuencia, esta limitación que establece la Ley de Municipios Autónomos puede ser interpuesta como una defensa ante los reclamos de un acreedor.

**III**
**A.**

Como es sabido, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". Cód. Civ. PR, Art. 1802, 31 LPRA sec. 5141. El referido artículo "protege el deber general de diligencia necesario para la convivencia social". Carlos J. Irizarry Yunqué, Responsabilidad Civil Extracontractual: Un estudio basado en las decisiones del Tribunal Supremo de Puerto Rico, 7ma ed., 2009, pág. 19 (citando a Muñiz-Olivari v. Steifel Labs., 174 DPR 813, 818 (2008)). Es por ello que se ha determinado que del daño surge la obligación de resarcir al damnificado. Agosto Vázquez v. F.W. Woolworth & Co., 143 DPR 76, 81 (1997).

En cuanto a las obligaciones, es de conocimiento que cuando se tiene más de un deudor se pueden clasificar como mancomunadas o solidarias. "En las primeras, la deuda puede ser dividida y cada deudor responde únicamente por la parte que le corresponde. En las segundas, la deuda se considera indivisible y cada deudor responde indistintamente por la totalidad de la deuda". Maldonado Rivera v. Suárez, 195 DPR 182, 194 (citas omitidas). Al respecto, el Código Civil de Puerto Rico establece que cuando concurren varios acreedores o deudores en una obligación, se presume que la misma es mancomunada. Cód. Civ. PR, Art. 1090, 31 LPRA sec. 3101. No obstante, este Tribunal ha determinado que este

principio no aplica en materia de responsabilidad civil extracontractual y que, por tanto, se responde solidariamente por los daños ocasionados. Sánchez Rodríguez v. López Jiménez, 118 DPR 701, 705 n. 2 (1987).

En ese sentido, la solidaridad se fundamenta en su utilidad para ser un instrumento con el cual se pueda satisfacer de mejor forma los fines de la relación de la cual nace. En el caso de solidaridad de deudores, esa utilidad sería el aumento de la seguridad de que la deuda será satisfecha, en el tiempo oportuno y que el acreedor podrá elegir qué deudor puede cumplir de mejor forma. M. Albaladejo, Comentarios al Código Civil y Compilaciones Forales, Madrid, Editorial Revista de Derecho, Madrid, Privado, 1983, T. XV, Vol. II, pág. 227. Es por tanto que se señala que la característica principal de la solidaridad es la trascendencia de las actuaciones de cada uno de los sujetos respecto a los demás titulares del crédito o la deuda. Íd., pág. 258. En otras palabras, la utilidad de la solidaridad entre los deudores, o sea, la solidaridad pasiva, es hacer más segura la posición del acreedor. Ello, ya que al haber más deudores, a cada uno se le puede exigir el cumplimiento total de la deuda. Una vez satisfecho el acreedor, los deudores deben resolver entre sí. M. Albaladejo, Derecho Civil, 8ta ed., Barcelona, Librería Bosch, 1989, T. II, Vol. I, pág. 105.

Es por lo anterior expresado que la solidaridad implica una relación externa entre el acreedor y los

codeudores, en la cual cada deudor responde por la totalidad de la deuda ante el acreedor. Torres Ortiz v. ELA, 136 DPR 556, 563-564 (1994). De igual forma, surge una relación interna entre los codeudores que "permite al deudor solidario que haya pagado más de lo que le corresponde, reclamar a los demás codeudores las porciones correspondientes". Szendrey v. Hospicare, Inc., 158 DPR 648, 654 (2003) (citando a Cód. Civ. PR, Art. 1098, 31 LPRA sec. 3109). A esta relación interna se le llama "derecho de nivelación, de recobro, de reintegro, de reembolso, de contribución o de regreso". J. R. Vélez Torres, Derecho de Obligaciones, Curso de Derecho Civil, 2da ed. rev., San Juan, 1997, pág. 93. Ahora bien, examinemos los efectos del artículo 1101 del Código Civil en la controversia planteada

**B.**

El Código Civil de Puerto Rico establece en su artículo 1101 lo siguiente:

> El deudor solidario podrá utilizar contra las reclamaciones del acreedor todas las excepciones que se deriven de la naturaleza de la obligación y las que le sean personales. De las que personalmente correspondan a los demás, sólo podrá servirse en la parte de la deuda de que éstos fueren responsables. Cód. Civ. PR Art. 1101, 31 LPRA sec. 3112.

Este precepto proviene del artículo 1148 del Código Civil de España, el cual contiene el mismo texto. Mediante estas disposiciones, ambas jurisdicciones contemplan una "excepción al principio de solidaridad con fundamentos bien justificados". E. Vázquez Bote, Derecho civil de

<u>Puerto Rico</u>, San Juan, FAS, Ediciones Jurídicas, 1973, T. III, Vol. I, pág. 159.

Los tratadistas del Derecho puertorriqueño y español reconocen que el artículo 1101 y el artículo 1148, respectivamente, debilitan los principios de la solidaridad que establecen que cada deudor responde por la totalidad de la deuda ante el acreedor. "[S]upone una desviación del principio de que se parte en la obligación solidaria, aflorando a la relación externa el contenido de la interna". Albaladejo, <u>Derecho Civil</u>, <u>op. cit.</u>, pág. 100. No obstante, destacan que, "en lugar de ser una derivación inflexible de la naturaleza de la obligación solidaria", por criterios de política pública se permite que un deudor levante defensas de los demás deudores o suyas para evitar "pagar una deuda ajena y además indebida". J. Puig Brutau, <u>Fundamentos de Derecho Civil</u>, 3era ed. rev., Barcelona, Bosch, Casa editorial, S.A., 1985, T. I, Vol. II, págs. 170-171. El propósito, por lo tanto, responde a evitar una interpretación restrictiva de la solidaridad que daría paso a que el deudor pague la deuda, "sin poder luego reclamar, definitiva o temporalmente, el reintegro al codeudor". J. Castán Tobeñas, <u>Derecho civil español, común y foral</u>, Madrid, 17ma ed., Ed. Rius S.A., 2008, T. III, pág. 168.

Por ello, entienden que este "efecto exorbitante no tiene porqué [sic] formar parte de la estructura típica de la solidaridad de deudores, ya que nadie debe verse

obligado a responder de una deuda inexistente, a menos que se haya comprometido a ello expresamente". A. Cañizares Laso *et al.*, <u>Código civil comentado</u>, Navarra, Civitas, Vol. III, T. IV, 2011, pág. 310. Es más, reconocen que "el deudor solidario debe poder utilizar, también externamente, como cualquier deudor, todos los medios de defensa existentes frente a la reclamación de una obligación que le es propia y de la que es obligado principal". <u>Íd.</u>, pág. 311. Ello resolvería "la vieja preocupación de por qué los deudores solidarios han de soportar y prorratearse la parte de la deuda común que uno de ellos rigurosamente no debe en cuanto puede excepcionar el pago". A. Cristóbal Montes, <u>Excepciones oponibles por el deudor solidario</u>, 74 Revista de Derecho Privado 863, 874 (1990).

Se ha argumentado que la intención de los legisladores no fue extender las consecuencias de la solidaridad al extremo de impedir la aplicación de excepciones personales. A pesar de que la solidaridad tiene el fin de garantizar que los derechos de los acreedores no disminuyen y que puedan reclamar a cada deudor sin limitación ni condición, se ha señalado que podría ser antijurídico que, en ciertas circunstancias, como la nulidad de la obligación para un deudor, se conserve íntegramente para con los otros deudores. A esos efectos, es que se han reconocido las excepciones personales de los deudores. Q. Micius Scaevola, <u>Código</u>

Civil Comentado y Concordado Extensamente y Totalmente Revisado y Puesto al día por Francisco Ortega Lorca, 2da ed., Madrid, Instituto Editorial Reus, 1957, T. XIX, págs. 880-882. Por tanto, "la incapacidad de uno de los deudores solidarios . . . podrá alegarse por el incapaz para librarse totalmente del pago inmediato; y por el otro para librarse de la parte de deuda que en la relación interna -en la realidad- corresponde al incapaz". J.L. Lacruz Berdejo, Elementos de Derecho Civil, 5ta ed. rev., Madrid, Dykinson, 2011, T. II, Vol. I, pág. 43.

El artículo 1101 no especifica cuáles son las defensas que se pueden invocar por parte de los codeudores solidarios. Más aún, se ha reconocido lo difícil que es conocer cuáles son las excepciones específicas que se derivan de este articulado. J. Caffarena Laporta, La solidaridad de deudores: Excepciones oponibles por el deudor solidario y modos de extinción de la obligación en la solidaridad pasiva, Madrid, Editorial Revista de Derecho Privado, 1980, págs. 1-2. Sin embargo, el artículo si precisa que los deudores pueden invocar lo siguiente: (1) excepciones que se derivan de la naturaleza de la obligación; (2) excepciones personales del deudor demandado, y (3) excepciones personales de los otros deudores.

Las excepciones que se derivan de la naturaleza de la obligación son aquellas propias del origen de ella y

que surgen durante su desarrollo o afectan su vigencia. Cañizares Laso, op. cit. Se refieren "a las defensas derivadas del contenido, creación, vicisitudes y, en general, circunstancias objetivas de la deuda". M. Albaladejo, Comentarios al Código Civil y Compilaciones Forales, op. cit., pág. 393. Éstas pueden incluir el "objeto ilícito, falta de forma, prescripción o extinción por cualquiera de las causas permitidas por ley". Vélez Torres, op. cit., págs. 90-91. Su característica particular es que pueden ser opuestas por cualquiera de los deudores solidarios y su efecto es para todo el grupo de deudores. Albaladejo, Comentarios al Código Civil y Compilaciones Forales, op. cit., pág. 394.

Cuando se trata de las excepciones personales, típicamente se hace referencia a reclamaciones de vicios de consentimiento y falta de capacidad para contratar. Cañizares Laso, op. cit. Véase también Vélez Torres, op. cit., pág. 91. No obstante, las defensas personales pueden ser más abarcadoras y generales:

> [L]a palabra 'personales', aplicada a las excepciones que en cada deudor singularmente concurran, no significa exclusiva y rigurosamente que se refieran a las circunstancias de su capacidad personal o especial consentimiento, sino que comprenden todas aquellas excepciones que de un modo especial se concreten en su deuda propia.
>
> Al hablar pues, de excepciones personales *se quiere decir peculiaridades de cada obligación parcial comprendidas* en la solidaridad, bien porque sean aquéllas varias distintas, bien porque, aun siendo ésta una sola, tiene al fin . . . que considerarse dividida entre los varios obligados. J. M. Manresa y Navarro,

> Comentarios al código civil español, 6ta ed., Madrid, Instituto Editorial Reus, 1967, T. VIII, Vol. I, págs. 536-537 (énfasis suplido).

Es decir, lo que constituye una defensa personal se puede interpretar liberalmente, recordando siempre que las defensas personales a nombre de otros deudores sólo liberan al deudor que las utilice en la parte de la deuda que corresponda al deudor a quien personalmente le aplica la excepción. Cañizares Laso, op. cit. Albaladejo expone que las excepciones personales "tienen su origen en la relación propia y distinta del acreedor con cada uno de los deudores". Albaladejo, Comentarios al Código Civil y Compilaciones Forales, op. cit, págs. 393-394. Así también, señala que "[l]os codeudores del titular de la excepción personal no vendrá obligado a pagar la parte de la deuda que, en virtud de tal excepción, se extingue en beneficio de todos". Íd., pág. 398.

Este Tribunal no ha atendido directamente el artículo 1101 del Código Civil. No obstante, opiniones recientes han demostrado una tendencia hacia una interpretación evolutiva de la solidaridad en el campo de la responsabilidad civil extracontractual que refleja coherencia con el uso de este artículo.

Así, por ejemplo, en Fraguada Bonilla v. Hospital Auxilio Mutuo, este Tribunal incorporó la solidaridad in solidum, proveniente de Francia y adoptada por España, a nuestro ordenamiento de responsabilidad civil extracontractual en materia de prescripción. Fraguada

Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365 (2012). La solidaridad *in solidum* o imperfecta sostiene el efecto primario de que cada uno de los deudores responde por la deuda entera ante el perjudicado. Íd., pág. 380 (citando a A. Cristóbal Montes, Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil, Barcelona, Bosch, Casa Editorial, S.A., 1985, pág. 36). Sin embargo, a diferencia de la solidaridad regular, la solidaridad *in solidum* no cuenta con el efecto secundario de la representación entre los codeudores. Contempla, entonces, una autonomía entre los deudores porque, contrario a una relación contractual, estos no están "animados por una voluntad común". Íd., pág. 381 (citando a C. Gómez Ligüerre, Solidaridad y derecho de daños: Los límites de la responsabilidad colectiva, Navarra, Editorial Aranzadi, S.A., 2007, pág. 99). En consecuencia, determinamos que el afectado por un daño debe interrumpir el término prescriptivo de la causa de acción contra cada uno de los cocausantes.

Posteriormente, en Maldonado Rivera v. Suárez, sostuvimos la incorporación de la solidaridad *in solidum* al establecer que el causante que no es incluido en la acción de daños y perjuicios dentro del término prescriptivo no puede traerse luego como tercero demandado. Maldonado Rivera v. Suárez, 195 DPR 182, 208 (2016). Además, siguiendo la lógica de Fraguada Bonilla v. Hosp. Aux. Mutuo, concluimos que tampoco hay un

derecho de nivelación en contra de éste, porque no sería necesario. La acción prescrita contra un deudor solidario implica que se extingue su obligación ante el acreedor y los demás cocausantes. Íd., pág. 209. Por lo tanto, establecimos que la partida del cocausante que no fue demandado dentro del término prescriptivo de un año se reduce de la totalidad de los daños. Íd., pág. 210.

A pesar de que este Tribunal no hizo mención del artículo 1101 en estas opiniones, ciertamente el mismo es coherente con estas interpretaciones. Al igual que lo dispuesto en el artículo 1101, se permitió que cocausantes de un daño presentaran defensas que se derivan de la naturaleza de la obligación civil extracontractual, en esos casos la prescripción, para reducir la cuantía del daño por la que son directamente responsables. Este Tribunal, entonces, favoreció la evolución de la solidaridad para que persiga una "más equitativa distribución de los daños y de los riesgos, evitando la drástica distinción del Código Civil de obligar al 'todo' o a nada según se trate de culpa o de otra circunstancia". J. R. León Alfonso, La categoría de la obligación in solidum, Sevilla, Publicaciones de la Universidad de Sevilla, 1978, pág. 103.

Cabe mencionar que el Tribunal Supremo de España sí ha reconocido las defensas que provienen de su artículo 1148. En un caso de daños y perjuicios por un accidente automovilístico, ese foro supremo expresó que "cada uno

de los deudores debe cumplir íntegramente la prestación, pudiendo en casos como el presente, conforme al art. 1148, cada deudor solidario . . . utilizar todas las excepciones que deriven de la naturaleza de la obligación". S. 7 de mayo de 1993, Núm. 3464/1993. En ese mismo año, el Tribunal Supremo de España reconoció la prescripción como una defensa de un codeudor solidario. S. 23 de junio de 1993, Núm. 4722/1993.

### C.

En Puerto Rico, la solidaridad goza de ciertas excepciones. Una de ellas ocurre, por ejemplo, cuando los patronos que les proveen a sus empleados el seguro provisto bajo la Ley del Sistema de Compensaciones por Accidentes del Trabajo no pueden ser demandados por daños y perjuicios. Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935, 11 LPRA sec 21. Hemos sostenido esa inmunidad al prohibir que el demandado por daños y perjuicios traiga como tercero al patrono. Cortijo Walker v. AFF, 91 DPR 574, 582 (1964). Cónsono con ello, más adelante determinamos que los codeudores de un patrono inmune sólo responden "en proporción a su propia culpa". Viuda de Andino v. AFF, 93 DPR 170, 182 (1966). Véase también Rosario Crespo v. AFF, 94 DPR 834, 849 (1967). Por tanto, en estos casos no hay necesidad de acudir en nivelación en contra del patrono, porque la cuantía de

responsabilidad de éste ha sido descontada de la indemnización que recibe el perjudicado.

Otra excepción a la solidaridad consiste en la inmunidad interfamiliar. Cód. Civ. PR, Art. 1810(A), 31 LPRA sec. 5150. Este Tribunal ha reafirmado que un menor está impedido de alegar daños y perjuicios en contra de un miembro del círculo familiar cercano, cuando se afecta la unidad familiar. Colón Santos v. Coop. Seg. Múlt. PR, 173 DPR 170, 184 (2008). Al igual que bajo la inmunidad patronal, en estas situaciones se reducen las partidas de daños por el porcentaje atribuible al familiar. Íd. Por ello, el cocausante del daño no puede demandar al familiar como tercero ni nivelar contra él.

En ambas circunstancias, la inmunidad, como excepción a la solidaridad, implica que el damnificado no será indemnizado por la totalidad de los daños que sufrió. La proporción de culpa que se les atribuya a los cocausantes inmunes no será compensada, ya que se descuenta del monto total de los daños adjudicados. Por esta razón, los cocausantes no pueden traer a la parte inmune como terceros ni nivelar en contra de éstos. La inmunidad, entonces, constituye una excepción significativa al principio general de la solidaridad que exige que todos los deudores respondan por la totalidad de la deuda.

**D.**

De otra parte, adviértase que el Código Civil de Puerto Rico establece diáfanamente, en su artículo 1098,

que la insolvencia económica de un deudor solidario será suplida por los demás codeudores. Cód. Civ. PR, Art. 1198, 31 LPRA sec. 3109. En caso de que un codeudor sea incapaz económicamente de pagar por su responsabilidad en los daños, sus codeudores solidarios pagarán la parte correspondiente del primero a prorrata de la deuda de cada uno. Íd. Debido a que la disposición es expresa, la insolvencia económica no puede ser una defensa del codeudor solidario ante el acreedor bajo el artículo 1101. Albaladejo coincide con esa apreciación al exponer que por "lo que no resulta liberado el deudor, aunque le haya sido personada su parte, es de suplir . . . la insolvencia de otros codeudores". M. Albaladejo, Derecho Civil, op. cit., pág. 100. Véase además, Gómez Ligüerre, op. cit., pág. 69.

Ahora bien, resulta pertinente resaltar que la insolvencia económica es distinguible de la responsabilidad limitada de un municipio. El Legislador se ocupó de disponer expresamente que la insolvencia económica no será impedimento para indemnizar al acreedor por los daños adjudicados. En ese caso, los demás codeudores suplen la responsabilidad del insolvente proporcionalmente. Por ello, "hay una mutua cobertura del riesgo de insolvencia". Puig Brutau, op. cit., pág. 173 (citas omitidas). De esa forma, la Asamblea Legislativa proveyó un remedio para que se asuma el riesgo de manera proporcional. Por el contrario, según expuesto, en el

caso de la responsabilidad limitada de los municipios, no existe norma que disponga de proceso alguno para la distribución de responsabilidad entre los codeudores solidarios bajo este escenario.

## IV

Cónsono con el artículo 1101 del Código Civil, las expresiones recientes de este Tribunal Supremo y las interpretaciones de los tratadistas, concluyo que un codeudor solidario puede presentar el límite de responsabilidad que cobija a otro codeudor como una defensa personal del último para no responder por su porciento de responsabilidad. Ciertamente, el límite de responsabilidad de un codeudor es una peculiaridad que surge de una de las obligaciones parciales, lo cual constituye una defensa personal conforme al artículo 1101 del Código Civil. Véase Manresa y Navarro, op. cit. De esta manera, se evita que todo el que coincida como codeudor solidario con un municipio se vea forzado a pagar la parte no cubierta por éste, por la limitación de responsabilidad que se le ha otorgado por ley. El efecto de permitir la defensa es disminuir de la deuda solidaria la cuantía correspondiente al deudor con responsabilidad limitada. Por ende, al igual que se determinó en Maldonado Rivera v. Suárez, supra, la discusión sobre nivelación sería innecesaria, porque los codeudores no pagarán en exceso de su responsabilidad.

Ante ese cuadro, estoy conforme con lo pautado en la Opinión mayoritaria. Pesa en mi dictamen el razonamiento aquí expuesto en torno al discutido artículo 1101 del Código Civil, supra. En segundo término, también comparto la analogía en que se ancla la Opinión mayoritaria sobre la inmunidad patronal y la inmunidad familiar.

**V**

Por los fundamentos expuestos, resulta incuestionable que el límite de responsabilidad del municipio es una defensa personal que puede ser oponible por un codeudor solidario, conforme el artículo 1101 del Código Civil. Siendo ello así, estoy conforme con la decisión emitida por este Tribunal.

Luis F. Estrella Martínez
Juez Asociado