ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **INCOM INVESTMENT, CORP. y otros**<br><br>Apelante<br><br>v.<br><br>**RAFAEL RACHID y otros**<br><br>Apelado | KLAN202400268 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.: **AR2020CV00837**<br><br>Sobre: Daños y Perjuicios |

Panel Especial integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y el Juez Monge Gómez.

Cintron Cintron, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece ante este Tribunal de Apelaciones, Incom Investment Corp., (Incom) y solicita que revisemos la *Sentencia Parcial* emitida el 22 de febrero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI).[1] Mediante la misma, el TPI declaró Con Lugar la *Moción de Sentencia Sumaria* presentada por MAPFRE PRAICO Insurance Company (MAPFRE), y desestimó la demanda en contra de estos por no estar el "incumplimiento contractual" cubierto en la póliza emitida a favor de la corporación sub-contratada por Maridian Construction, LLC. (Maridian), Cosme Group LLC (Cosme).

Por los fundamentos que expondremos a continuación, revocamos el dictamen apelado.

### I.

El caso de referencia dio inicio con una *Demanda* sobre incumplimiento de contrato, resolución del contrato y daños y

---

[1] La *Sentencia Parcial* fue notificada el 23 de febrero de 2024.

perjuicios instada por Incom, contra Maridian Construction Group (Maridian) y Cosme. En la demanda, alegó que para el año 2018, Incom contrató los servicios de Maridian y el Ingeniero Rafael Rachid para la impermeabilización de los techos de dos edificios que eran propiedad de Incom. Ambos edificios, ubicados en Arecibo y Canóvanas, respectivamente, eran alquilados a la Autoridad Escolar de Alimentos del Departamento de Educación. El edificio ubicado en Arecibo, a su vez, tenía un segundo inquilino, la Iglesia Comunidad Cristiana de Adoración. Las propiedades eran utilizadas para el almacenamiento de alimentos de las escuelas en Puerto Rico.

Incom arguyó que las labores de impermeabilización realizadas por Maridian fueron deficientes, por lo que tuvieron que contratar los servicios de Green Shield Products para que evaluara dichas labores y las reparara. Como parte de la evaluación realizada por Green Shield Products, estos concluyeron que debían remover todo el material aplicado por Maridian y Cosme en el edificio y comenzar nuevamente la labor. Enfatizaron que, por un término de dos (2) años y cuatro (4) meses, transcurridos desde que se realizaron las labores por parte de Cosme, Incom tuvo continuos y serios problemas con los inquilinos de las propiedades por las deficiencias del trabajo realizado, que resultó en filtraciones, ocasionando pérdidas de alimentos. Por lo anterior, solicitó la suma de $601,823.40 en concepto de daños; $198,200.90 en concepto de la remoción y disposición del material defectuoso y $250,000.00 en concepto de daños sufridos por el señor Vicente E. Ríos Marques, presidente de Incom.

Posteriormente, Incom enmendó la *Demanda* para incluir los nombres de las codemandadas, la señora Diana Battle y la señora Carmen Sánchez Morales. El 24 de febrero de 2021, Incom presentó una *Tercera Demanda Enmendada* a los efectos de añadir a MAPFRE como aseguradora de Cosme. Las alegaciones relacionadas con la

negligencia, incumplimiento del contrato y daños se mantuvieron iguales que la demanda original.

El 9 de septiembre de 2021, MAPFRE presentó su *Contestación a Tercera Demanda Enmendada*, en la cual negó la responsabilidad que se le imputaba, bajo el fundamento de que la póliza emitida a favor de Cosme no proveía cubierta para los eventos que se reclamaban en la demanda. En específico, alegó que para que la póliza se activara, era necesario que el evento por el cual se reclamaba se hubiese manifestado como una ocurrencia de tipo accidente, según definido en la misma póliza expedida.

Así las cosas, MAPFRE presentó una *Moción Solicitando Se Dicte Sentencia Sumaria* en la que propuso 19 hechos incontrovertidos.[2] Alegó que de los remedios y alegaciones de la demanda, se desprendía que los actos culposos y/o negligentes alegados no activaban la cubierta de la póliza de responsabilidad civil expedida a favor de Cosme. Ello, pues el evento que dio lugar al reclamo no se consideraba una lesión corporal ("bodily injury") o un daño a la propiedad ("property damage"), según definido en la misma póliza.

En respuesta, el 31 de enero de 2022, Incom presentó su oportuna *Oposición a Moción de Sentencia Sumaria.*[3] Adujo que no podía desestimarse la acción contra MAPFRE, haciendo una mera interpretación de lo que constituye una "ocurrencia", pues se debían analizar otras consideraciones que impedían se dictara sentencia sumaria a favor de MAPFRE.

El 28 de enero de 2022, notificada el 31 de enero de 2022, el TPI emitió una *Resolución*, en la cual declaró No Ha Lugar la *Moción*

---

[2] Del expediente ante nuestra consideración, no surge que se hayan anejado documentos a la *Moción de Sentencia Sumaria.*

[3] Como anejo, Incom adjuntó el siguiente documento: (1) Juramento de Vicente Ríos Marques.

*de Sentencia Sumaria* presentada por MAPFRE.[4] Inconforme con dicha determinación, MAPFRE acudió ante esta Curia apelativa para impugnar la *Resolución* emitida por el foro primario.

Luego de evaluado el expediente ante su consideración, un panel hermano de este Tribunal emitió una *Sentencia* el 27 de enero de 2023, en la cual expidió el auto de *certiorari*, confirmó la *Resolución* emitida por el TPI y determinó que **"era necesaria la celebración de un juicio en su fondo para dilucidar si los actos que provocaron los daños reclamados por Incom están cobijados bajo la interpretación de conducta negligente, como modalidad del concepto "ocurrencia".**[5] (Énfasis nuestro).

Posterior a la determinación de este Tribunal, el 30 de mayo de 2023, MAPFRE presentó una *Moción Solicitando se Dicte Sentencia Sumaria Parcial* en la cual expuso 14 hechos que, a su consideración, no estaban en controversia.[6] En esta, arguyó que bastaba con revisar las alegaciones de la demanda presentada por Incom para concluir que los actos culposos y/o negligentes alegados no activaban la cubierta de responsabilidad civil comercial expedida a favor de Cosme. Enfatizó que lo que reclamaba Incom es que no se cumplió con lo acordado en el contrato con Cosme, por lo que lo sucedido estaba totalmente excluido de la referida póliza.

El 8 de junio de 2023, Incom presentó su *Oposición a Solicitud de Sentencia Sumaria Parcial* de MAPFRE PRAICO INSURANCE COMPANY.[7] En síntesis, alegó que este Tribunal de Apelaciones emitió una *Sentencia* mediante la cual se confirmó la *Resolución* emitida por el foro primario el 28 de enero de 2022, que constituía

---

[4] Surge del expediente que el 12 de febrero de 2022, MAPFRE presentó una *Moción Solicitando Reconsideración*, la cual fue declarada No Ha Lugar el 11 de marzo de 2022.

[5] Véase, KLCE202200397.

[6] Como anejos de la *Moción Solicitando se Dicte Sentencia Sumaria Parcial,* MAPFRE adjuntó los siguientes documentos: (1) Contrato suscrito entre Maridian e Incom, (2) Purchase Order #13291 de Maridian a Cosme y (3) Common Policy Declarations de Cosme Group.

[7] Del expediente ante nuestra consideración, no surge que se hayan anejado documentos a la *Oposición a Solicitud de Sentencia Sumaria Parcial.*

la ley del caso, por lo que, como cuestión de derecho, quedó adjudicada la solicitud de sentencia sumaria presentada por MAPFRE, y que estos no podían presentar una nueva solicitud con los mismos argumentos previamente resueltos.

Evaluadas las posturas de ambas partes, el 22 de febrero de 2024, notificada el 23 de febrero de 2024, el TPI dictó la *Sentencia Parcial* que hoy revisamos. Mediante la misma, declaró Ha Lugar la moción para que se dictara sentencia sumaria presentada por MAPFRE y desestimó la causa de acción en contra de estos. En su dictamen, el foro primario formuló las siguientes determinaciones de hechos:

1. [Incom] Investment Corp., suscribió un contrato con la codemandada Maridian para realizar trabajos en el edificio de éstos ubicado en el Municipio de Arecibo. En este contrato, Maridian tenía que realizar un reemplazo del sistema de impermeabilización del techo de un edificio ubicado en Arecibo por la cantidad de $426,700.00.

2. Se firmó un contrato entre Maridian y Cosme Group, Corp., para realizar las obras de impermeabilización del techo del edificio de Incom ubicado en Arecibo, Puerto Rico.

3. **No cabe duda que la única forma en que las partes pueden reclamarse entre sí es a base del contrato suscrito entre éstos y las alegaciones en cuanto el incumplimiento excluido de la póliza expedida por MAPFRE.**

(Énfasis nuestro)

4. La tercera demanda enmendada en contra de MAPFRE fue presentada con el objetivo de que se provea defensa y cubierta en el caso a través de la póliza de responsabilidad civil comercial (CGL) número 16001788007899, emitida a favor de Cosme Group, LLC.

5. La póliza de responsabilidad civil (CGL) expedida por MAPFRE PRAICO INSURANCE a favor de Cosme Group establece que:

> **"COMMERCIAL GENERAL LIABILITY COVERAGE FORM"**
> **SECTION 1 – COVERAGES**
> **Coverage A. Bodily Injury and Property Damage Liability**
>
> [...]

b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by and "occurrence" that takes place in the "coverage territory"; (2) The "bodily injury" or "property damage" occurs during the police period.

6. En cuanto a las definiciones de los conceptos de lesión corporal, daño a la propiedad y ocurrencia, expedida por MAPFRE PRAICO INSURANCE a favor de Cosme Group establece que:

**Section V – Definitions**

**[…]**

3. "**Bodily Injury**" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

[…]

13. "**Ocurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[…]

17. "Property Damage" means:
     a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it.

7. En cuanto a las obligaciones contractuales, la póliza expedida por MAPFRE PRAICO INSURANCE a favor de Cosme Group establece que expresamente excluye cualquier reclamación por incumplimiento de contrato:

**CAUSES OF LOSS – SPECIAL FORM**

**4. Special Exclusions**

     The following provisions apply only to the specified Coverage Forms:

c. **Legal Liability Coverage Form**

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit" or pay damages that you are legally liable to pay, solely

by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

    **(i)** Your assumption of liability was executed prior to the accident; and

    **(ii)** The building is Covered Property under this Coverage Form.

8. En las exclusiones, la póliza expedida por MAPFRE PRAICO INSURANCE a favor de Cosme Group establece específicamente como una exclusión el incumplimiento contractual:

**2. Exclusions**

This insurance does not apply to:

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**1.** That the insured would have in the absence of the contract or agreement; or

**2.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    **(a)** Liability to such party for, or for the cost of, that party's defense has algo been assumed in the same "insured contract"; and

    **(b)** Such attorneys' fees and litigation expenses are for defense of that party against civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**d. Contractual Liability**

    Liability assumed by you under any contract or agreement.

(Énfasis suplido).

9. Cualquier reclamación sobre incumplimiento contractual, está expresamente excluido de la

póliza expedida por MAPFRE PRAICO INSURANCE a favor de Cosme Group LLC.

10. La reclamación que está pendiente de adjudicarse en contra de Cosme Group y/o Gilberto Rodríguez es por los daños ocasionados por el incumplimiento contractual al alegadamente realizar una labor deficiente, utilización del material defectuoso por su parte y las angustias sufridas en el manejo del problema por parte de [Incom] con sus inquilinos.

11. La reclamación va dirigida a obtener la resolución del contrato, la devolución de lo gastado en reparar la alegada labor deficiente e indemnización por responder a los inquilinos. Dichas acciones, omisiones y remedios solicitados por los demandantes no pueden ser satisfechos de ninguna forma por Mapfre Praico al estar dichos daños reclamados a raíz de un incumplimiento contractual, lo que no queda duda alguna que está debidamente excluidos por la póliza emitida.

12. El 3 de septiembre de 2021, MAPFRE PRAICO INSURANCE por conducto de la ajustadora Camille Hernández Pagán envió carta a Cosme Group, Corp., por vía correo certificado y electrónico informando que MAPFRE PRAICO INSURANCE, no podía ofrecer defensa y/o cubierta en el caso debido a que la reclamación no estaba cubierta por la póliza.

Inconforme con la determinación del TPI, Incom presentó una *Moción Solicitando Reconsideración de Sentencia Parcial* pero la misma fue denegada por medio de una *Resolución,* emitida el 5 de marzo de 2024 y notificada el 6 de marzo de 2024.

Aun en desacuerdo, Incom acude ante este Foro y alega que el TPI cometió los siguientes errores:

Erró el TPI como cuestión de hecho y de derecho, al hacer una determinación contraria a lo establecido por el Honorable Tribunal de Apelaciones en una sentencia final y firme.

Cometió error de hecho y de derecho el TPI al desestimar la Demanda contra Mapfre, obviando la ley del caso, conforme establecida por este Honorable Tribunal de Apelaciones en su sentencia el 27 de enero de 2023.

Cometió error de hecho y de derecho en su interpretación del concepto de "ocurrence" (ocurrencia), según este fue interpretado por nuestro Honorable Tribunal Supremo.

Erró el TPI como cuestión de hecho y de derecho, al contradecirse a sí mismo, estableciendo que la segunda solicitud de sentencia sumaria de Mapfre planteaba

asuntos distintos, cuando en una Resolución anterior, había expresado absolutamente lo contrario. O sea, que ambas planteaban lo mismo.

El 22 de abril de 2024, MAPFRE compareció mediante *Alegato de la Parte Apelada.*

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A.**

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[8] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y

---

[8] Véase, además: *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *Ferrer et. al. v. PRTC,* 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión,* 178 DPR 200, 213-214 (2010).

pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión*, supra, págs. 213-214, seguido en *Meléndez González v. M. Cuebas*, supra, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda

si existe una controversia legítima sobre un hecho material. Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'". La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión,* supra, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas,* supra, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas,* supra, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión

que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Finalmente, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Meléndez González v. M. Cuebas*, supra, pág. 119.

**B.**

La industria de seguros está revestida del más alto interés público. Por ello, es regulada ampliamente por el Estado. *Jiménez López et al. v. SIMED,* 180 DPR 1, 8 (2010); *Carpets & Rugs v. Tropical Reps*, 175 DPR 615, 632 (2009). Ello debido al papel que juega en la protección de los riesgos que amenazan la vida o el patrimonio de los ciudadanos. *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 149 (2021); *Rivera Matos v. Estado Libre Asociado de Puerto Rico*, 204 DPR 1010, 1019 (2020). Uno de los renglones mayormente reglamentado por el Código de Seguros de Puerto Rico es el perteneciente a las prácticas desleales y fraudes en el negocio de los seguros. Como parte de las prácticas desleales detalladas allí, se encuentran aquellas relacionadas al ajuste de reclamaciones. *Carpets & Rugs v. Tropical Reps*, supra, a la pág. 632. Véanse, además, Arts. 27.010–27.270 del Código de Seguros de Puerto Rico, 26 LPRA. secs. 2701–2736.

El Código de Seguros de Puerto Rico regula, entre otros aspectos de la industria y de la entidad reguladora, el contrato de seguros. En específico, este cuerpo de normas define seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". *Feliciano Aguayo v.* MAPFRE, supra, a la pág. 148; Art. 1.020 del Código de Seguros de Puerto Rico, 26 LPRA sec. 102. Los contratos de seguro tienen como característica esencial la obligación de indemnizar y son de extrema buena fe. *OCS v. CODEPOLA*, 202 DPR 842, 859 (2019). Esto es, que se requiere un extremo grado de buena fe en las negociaciones precedentes a la perfección o consumación del contrato.

En atención al caso del epígrafe, se ha resuelto que "[p]ara que exista solidaridad entre una compañía aseguradora y el asegurado, ello debe surgir claramente del contrato de seguros. La solidaridad debe haberse pactado expresamente, o al menos, debe surgir claramente del contenido del contrato que la relación entre las partes se constituyó con tal carácter". *Gen. Accid. Ins. Co. P.R. v. Ramos*, 148 DPR 537 (1999), que cita a *Torrellas v. Sucn. Torrellas*, 57 DPR 501 (1940). Por lo tanto, en los contratos de seguro, como en todo contrato, la solidaridad no se presume. Véase, Art. 1090 del Código Civil de 1930, 31 LPRA sec. 3101, y *Quílez-Velar v. Ox Bodies, Inc.*, 198 DPR 1079 (2017).

**III.**

En su recurso de apelación, Incom señala que erró el foro primario al (1) determinar en su *Sentencia Parcial* lo contrario a lo ya resuelto por este Tribunal de Apelaciones en la *Sentencia* emitida el 27 de enero de 2023 y (2) al desestimar la *Demanda* contra MAPFRE, obviando la ley del caso. Además, arguye que la interpretación del concepto de "ocurrencia" hecha por el TPI fue

errónea. En específico, asegura que la reclamación en el caso de epígrafe gira en torno a si la póliza de seguro de MAPFRE tiene o no cubierta para la reclamación alegada en la *Demanda* por Incom. Hace énfasis en que desde el 27 de enero de 2023, este Tribunal ordenó la celebración de una vista en su fondo para determinar si MAPFRE tenía o no responsabilidad, para poder adjudicar la controversia y que no se ha cumplido con dicho mandato.

Por su parte, MAPFRE argumenta que las alegaciones de Incom adjudican: (1) responsabilidad a Maridian y a Cosme por violar el contrato entre las partes; (2) negligencia de sus empleados y ejecutivos y (3) la falta de capacidad para realizar las labores requeridas en el contrato. Por lo anterior, enfatiza que los actos culposos y/o negligentes alegados en la *Tercera Demanda Enmendada* no activaron la cubierta de responsabilidad civil comercial expedida a favor de Cosme. Añade que no es correcto que Incom señale que en ambas mociones de sentencia sumaria MAPFRE utilizó las mismas alegaciones. Explica que en la primera moción de sentencia sumaria señaló que el evento reclamado en la demanda no se consideraba una "ocurrencia" de tipo accidental, una lesión corporal ("bodily injury") o un daño a la propiedad ("property damage"), según definido en la misma póliza. Luego, que al presentar la segunda moción de sentencia sumaria, arguyó que lo que reclamaba Incom era el incumplimiento de contrato, por lo que dicha reclamación estaba expresamente excluida de la póliza.

Según expuesto, este Foro intervino con el dictamen emitido por el TPI el 28 de enero de 2022. En particular, mediante la *Sentencia* pronunciada el 27 de enero de 2023, confirmamos la decisión del TPI en cuanto a la determinación que hizo sobre la solicitud de sentencia sumaria presentada por MAPFRE en ese

momento.[9] De la misma se desprende la necesidad de la celebración de un juicio en su fondo para dilucidar si los actos que provocaron los daños reclamados por Incom están cobijados bajo la interpretación de conducta negligente, como modalidad del concepto "ocurrencia". Además, se expresó que para lo anterior era indispensable:

> [D]eterminar si, en efecto, el suceso que da margen a los daños constituye un accidente para propósitos de la póliza, lo cual, requiere examinar el comportamiento que da base a la reclamación desde el punto de vista del asegurado y estar en posición de concluir si los mismos son o no intencionales.

En el transcurso del proceso en el foro de instancia, MAPFRE presentó una nueva solicitud de sentencia sumaria, alegando, en síntesis que Cosme no cumplió con lo suscrito en el contrato, por lo que los actos culposos y/o negligentes alegados no activaban la cubierta de responsabilidad civil comercial expedida a favor de Cosme. Añadió que, lo anterior se debía a que la reclamación de Incom iba dirigida a obtener la resolución del contrato, la devolución de lo gastado en reparar la alegada labor deficiente e indemnización al responder a los inquilinos por el incumplimiento contractual. En respuesta, Incom se opuso a que el foro primario considerara la nueva moción de sentencia sumaria presentada por MAPFRE, porque esta reiteraba los mismos planteamientos que incluyó en la primera moción sentencia sumaria presentada el 24 de septiembre de 2021.

El foro primario, luego de evaluar las solicitud de sentencia sumaria presentada por MAPFRE y la oposición, determinó que la reclamación de Incom, en efecto, trataba sobre el incumplimiento de contrato por parte de Cosme para el trabajo de impermeabilización de techos en los edificios alquilados a la Autoridad Escolar de Alimentos del Departamento de Educación.

---

[9] Véase, KLCE202200397.

Cónsono con lo anterior, el foro de instancia concluyó que la póliza de seguro de responsabilidad civil comercial emitida por MAPFRE a favor de Cosme, no se activaba para este tipo de reclamaciones, al no categorizarse como una ocurrencia, lesión corporal o daños a la propiedad, por lo que la demanda en contra de MAPFRE debía ser desestimada. Para ello, tomó en consideración las alegaciones de la solicitud de sentencia sumaria presentada por MAPFRE, así como la prueba presentada a su favor.

Analizado con detenimiento el expediente, es claro que el Tribunal de Primera Instancia no observó ni actuó conforme a nuestro mandato al obviar la celebración del juicio.[10] Ante ello, no tenemos otra opción que dejar sin efecto la *Sentencia Parcial* apelada. Nuevamente devolvemos el caso al TPI para que cumpla fielmente con los términos de la *Sentencia* emitida por este Foro anteriormente.

Aclaramos que con esta determinación no estamos prejuzgando en los méritos si procede o no que MAPFRE responda, como aseguradora de Cosme, por lo alegado en la demanda con relación a la cubierta de la póliza de responsabilidad. Dicha determinación le corresponde al foro apelado, luego de aquilatar la evidencia que sea presentada. Una vez el TPI celebre el juicio ordenado por esta Curia, deberá emitir un dictamen, el cual, de las partes entenderlo necesario, podrán recurrir ante nos.

**IV.**

Por las consideraciones que preceden, se revoca la *Sentencia Parcial* apelada y se deja sin efecto la misma. Se devuelve el caso al

---

[10] Cabe señalar que en nuestro pronunciamiento específicamente advertimos que el foro recurrido podía proceder con la "continuación de los procedimientos a tenor con lo aquí resuelto" conforme autoriza la Regla 53(A)(1) del Reglamento del Tribunal de Apelaciones 4 LPRA Ap. XII-B. De esta forma el Tribunal de Primera Instancia solo tenía jurisdicción para cumplir nuestro dictamen y no para proceder de otra forma.

Tribunal de Primera Instancia para la celebración del juicio, tal y como habíamos dispuesto anteriormente.

**Notifíquese Inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones