ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| PENÍNSULA MANAGEMENT HOLDING, LLC<br><br>Apelado<br><br>V.<br><br>EMPRESA CURBELO DURÁN, INC.; ISAAC CURBELO MORÁN; JANIUSHKA LIMARA DURÁN ROSA<br><br>Apelantes | TA2026AP00223 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Camuy<br><br>Caso Núm.: SJ2025CV01536<br><br>Sobre: Cobro de dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de abril de 2026.

Comparecen ante nos Empresa Curbelo Durán, Inc. (ECD), el señor Isaac Curbelo Morán y la señora Janiushka Limara Durán Rosa (en conjunto, apelantes), quienes solicitan la revisión de una *Sentencia* emitida y notificada el 5 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Camuy (TPI).[1] En el aludido dictamen, el foro primario declaró Con Lugar la *Demanda* por cobro de dinero instada por Península Management Holding, LLC (PMH o apelado) e impuso responsabilidad solidaria a los apelantes por la deuda reclamada, honorarios de abogado e intereses legales.

Por los fundamentos que se exponen a continuación, procede modificar la *Sentencia* apelada para relevar de responsabilidad a la Sociedad Legal de Bienes Gananciales (SLG) por la totalidad de la deuda, a la señora Durán Rosa respecto al segundo contrato de

---

[1] Entrada Núm. 33 en el expediente del caso SJ2025CV01536 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Aunque el caso se presentó en la Región Judicial de San Juan, se dispuso su traslado a la Región Judicial de Arecibo, ya que las direcciones físicas de los apelantes eran de Hatillo.

arrendamiento y revocar la imposición de honorarios de abogado por temeridad.

## I.

Este caso se originó el 25 de febrero de 2025, cuando PMH presentó una *Demanda* sobre cobro de dinero, incumplimiento de contrato y daños contractuales contra los apelantes.[2] En síntesis, alegó que el 3 de agosto de 2015, suscribió un contrato de arrendamiento con ECD, vigente inicialmente desde el 1 de septiembre de 2015 hasta el 31 de agosto de 2020, mediante el cual arrendó un local comercial en San Juan, Puerto Rico. Sostuvo que el señor Curbelo Morán y la señora Durán Rosa comparecieron en dicho contrato y se obligaron solidariamente al fiel cumplimiento de sus términos y condiciones. Adujo que el mismo establecía cánones mensuales escalonados, así como penalidades por pagos tardíos.

Asimismo, expuso que el 18 de julio de 2023, se suscribió un segundo contrato de arrendamiento con ECD, vigente desde el 1 de agosto de 2023 hasta el 31 de julio de 2028, en el cual el señor Curbelo Morán y la señora Durán Rosa se obligaron solidariamente al cumplimiento de sus términos y condiciones.

No obstante, planteó que ECD incumplió con el pago de los cánones de arrendamiento acordados, al efectuar algunos pagos de forma parcial y omitir otros en su totalidad. Indicó que, como resultado del incumplimiento, los apelantes adeudaban la suma de $40,850.00 por concepto de cánones y penalidades acumuladas, la cual advino líquida y exigible. Por consiguiente, solicitó el pago de la deuda, los intereses legales, las costas y los honorarios de abogado.

Posteriormente, el 25 de abril de 2025, los apelantes presentaron una *Contestación a Demanda*.[3] Estos aceptaron que ECD arrendó un local comercial propiedad del apelado, pero negaron las

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC.
[3] *Íd.*, Entrada Núm. 17 en SUMAC.

alegaciones relativas a los términos contractuales y a la cuantía reclamada. Además, el señor Curbelo Morán y la señora Durán Rosa negaron su responsabilidad personal y solidaria con ECD, al entender que era una corporación que poseía personalidad jurídica propia.

Luego, el 14 de enero de 2026, ECD se allanó a que se dictara sentencia a favor del apelado por $40,850.00 por cánones de arrendamiento y cargos por mora. Solicitó que, a dicha cantidad, se acreditaran $2,500.00 por concepto de fianza, para un balance pendiente de $38,350.00. Además, sostuvo que el señor Curbelo Morán y la señora Durán Rosa no respondían en su carácter personal por la deuda, dado que no figuraban como garantizadores o codeudores de las obligaciones pactadas. Argumentó que el señor Curbelo Morán suscribió el segundo contrato en su capacidad de presidente de la corporación, sin la comparecencia de su esposa.

El 16 de enero de 2026, PMH solicitó dictar sentencia sumaria a su favor al sostener que no existía una controversia real y sustancial de los hechos alegados en la *Demanda*.[4] En resumen, señaló que ECD admitió adeudar $40,850.00 por cánones y penalidades, solicitó acreditar $2,500.00 por concepto de fianza, por lo que se allanó a que el balance adeudado era de $38,350.00.

No obstante, planteó que el señor Curbelo Morán y la señora Durán Rosa negaron haber asumido la deuda de forma solidaria, aun cuando su responsabilidad surgió tras el incumplimiento contractual de ECD. Contendió que el otorgamiento del segundo contrato no extinguió las obligaciones contraídas, salvo hubiese mediado una novación expresa e inequívoca, lo que negó. Por ello, arguyó que los apelantes estaban obligados solidariamente al pago de la deuda.

En la alternativa, solicitó que, de determinarse que ocurrió una novación contractual extintiva, se condenara solidariamente a los

---

[4] *Íd.*, Entrada Núm. 30 en SUMAC.

apelantes al pago de $700.00 por las penalidades en el primer contrato, y se responsabilizara solidariamente al señor Durán Morán y a ECD al pago de $37,650.00 por los cánones adeudados y las penalidades del segundo contrato.

En igual fecha, el TPI emitió y notificó una *Orden*, en la que dispuso que la solicitud de sentencia sumaria, en particular el planteamiento relativo a una novación contractual extintiva sería atendida en la próxima vista señalada.[5]

Así las cosas, el 22 de enero de 2026, el TPI celebró una vista.[6] Durante la misma, los representantes legales de las partes ratificaron la existencia y la cuantía de la deuda. Empero, sostuvieron posturas encontradas en torno a la responsabilidad del señor Curbelo Morán y de la señora Durán Rosa. PMH apuntó que no habría suscrito el contrato de no haberse asumido la obligación solidaria. Aseveró que, en el primer contrato, ambos se obligaron solidariamente, mientras que en el segundo compareció uno de ellos. Además, afirmó que no ocurrió una novación que extinguiera dichas obligaciones.

Por su parte, los apelantes precisaron que hubo una novación contractual debido a que la expiración del primer contrato y la tácita reconducción entre los años 2022 al 2023 generó un nuevo contrato que sustituyó al anterior, por lo que adujeron que se extinguió la obligación derivada del primer contrato. Esgrimieron que el único contrato vigente era el segundo, suscrito únicamente por el señor Curbelo Morán, quien compareció en representación de la entidad corporativa, no a título personal. Manifestaron que no existía una cláusula de garantes o codeudores personales, por lo que la responsabilidad debía recaer exclusivamente en ECD.

---

[5] *Íd.*, Entrada Núm. 31 en SUMAC.
[6] Transcripción de la Prueba Oral Estipulada del 22 de enero de 2026, págs. 2-39. Véase Entrada Núm. 4 del expediente del caso TA2026AP00223 en SUMAC.

Trabada así la controversia, el 5 de febrero de 2026, el tribunal de instancia emitió una *Sentencia* en la que declaró Con Lugar la *Demanda* y condenó solidariamente a los apelantes al pago de $38,350.00, $3,000.00 por concepto de honorarios de abogado, intereses legales al 8.00% anual y costas.[7] En apoyo a su dictamen, formuló las siguientes determinaciones de hechos:

1. El 13 de agosto de 2015, las partes suscribieron un primer contrato de arrendamiento. En cuanto a la parte arrendataria se hizo constar lo siguiente:
   > DE LA SEGUNDA PARTE: EMPRESAS CURBELO [DURÁN], INC, Seguro Social Patronal 66-XXX-XXXX, representado por su presidente, Isaac Curbelo y su vice presidenta, Janiushka Durán, ambos mayores de edad, casados entre sí y vecinos de Hatillo, Puerto Rico, quienes afirman estar debidamente facultados para suscribir este acuerdo y quienes se obligan solidariamente al fiel cumplimiento de los términos y condiciones de este contrato, habiendo las partes asegurado tener la capacidad legal necesaria para suscribir el mismo, en su consecuencia libre y voluntariamente, denominado de aquí en adelante "Arrendatario."

2. Dicho primer contrato de arrendamiento habría tenido una vigencia de cinco años comenzando el 1 de septiembre de 2015 y terminando el 31 de agosto de 2020.

3. El 18 de julio de 2023, las partes suscribieron un segundo contrato de arrendamiento. En cuanto a la parte arrendataria se hizo constar lo siguiente:
   > DE LA SEGUNDA PARTE: EMPRESAS CURBELO [DURÁN], INC, Seguro Social Patronal 66-XXX-XXXX, representado por su presidente, Isaac Curbelo, mayor de edad, casado y vecino de Hatillo, Puerto Rico, quien afirma estar debidamente facultado para suscribir este acuerdo y se obliga solidariamente al fiel cumplimiento de los términos y condiciones de este contrato, habiendo las partes aseguradas tener la capacidad legal necesaria para suscribir el mismo, en su consecuencia libre y voluntariamente, denominado de aquí en adelante "Arrendatario."

4. Dicho segundo contrato de arrendamiento habría tenido una vigencia de cinco años comenzando el 1 de agosto de 2023 y terminando el 31 de julio de 2028.

5. En el término comprendido entre el 31 de agosto de 2020 y el 1 de agosto de 2023, la parte [demandada] continuó ocupando la propiedad a pesar de haber vencido el primer contrato y no haberse ejercido derecho u opción de renovación.

6. Acreditada a la deuda la fianza de $2,500.00 prestada por la parte demandada, la deuda pendiente de pago es de $38,350.00.

El TPI concluyó que el señor Curbelo Morán y la señora Durán Rosa se obligaron solidariamente junto a ECD en el primer contrato. Determinó que el hecho de que el señor Curbelo Morán suscribió el segundo contrato por sí solo no eximió de responsabilidad a la Sociedad Legal de Bienes Gananciales (SLG) al ser una empresa

---

[7] Entrada Núm. 33 en el expediente del caso SJ2025CV01536 en SUMAC.

común. Además, estableció que la relación contractual continuó mes a mes mediante la tácita reconducción, manteniéndose las partes, el carácter de la obligación y las demás condiciones del acuerdo.

Inconforme, el 2 de marzo de 2026, los apelantes presentaron este recurso ante esta curia apelativa, en el que señalaron que el TPI incidió en cometer los siguientes errores:

**PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR EL ARTÍCULO 520 (E) DEL CÓDIGO CIVIL, 31 L.P.R.A. § 6981 Y EN CONSECUENCIA CONDENAR A ISAAC CURBELO MORÁN Y JANIUSHKA LIMARA DURÁN ROSA A PAGAR SOLIDARIAMENTE, JUNTO A EMPRESA CURBELO DURÁN, INC., A LA PARTE DEMANDANTE LA SUMA DE $38,350.00.

**SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONDENAR A LA PARTE DEMANDADA AL PAGO SOLIDARIO DE $3,000.00 EN CONCEPTO DE HONORARIOS DE ABOGADO, INCLUYENDO INTERESES LEGALES AL 8% ANUAL, SOBRE LOS HONORARIOS, DESDE LA FECHA EN QUE SE DICTA LA SENTENCIA Y HASTA QUE SEA SATISFECHA.

En esencia, plantearon que TPI se equivocó al aplicar el Artículo 520(e) del Código Civil de Puerto Rico, 31 LPRA sec. 6981, e imponerles responsabilidad solidaria. Esgrimieron que la ECD poseía personalidad jurídica independiente de sus accionistas, por lo que no procedía extender la responsabilidad a los cónyuges ni a la SLG. Destacaron que la corporación realizó la actividad comercial objeto del arrendamiento y no por una empresa común del matrimonio. Reiteraron que el contrato vigente era el segundo, el cual la señora Durán Rosa no firmó, lo que demostró la intención de excluirla de responsabilidad personal.

Por otra parte, los apelantes cuestionaron la imposición de honorarios de abogado al sostener que no incurrieron en temeridad durante el trámite del caso. Señalaron que desde las etapas iniciales del litigio informaron al tribunal sobre unas irregularidades y extendieron una oferta transaccional que fue rechazada. Sostuvieron que no actuaron de mala fe, por lo que la imposición de honorarios

de abogado resultaba improcedente ante la ausencia de una determinación expresa de temeridad.

El 17 de marzo de 2026, PMH presentó su alegato en el que sostuvo que el foro apelado no incurrió en error al imponer responsabilidad solidaria a los apelantes, al afirmar que dicha obligación surgía de forma expresa de los contratos suscritos entre las partes. Argumentó que, en el primer contrato, ambos cónyuges se obligaron solidariamente, mientras que, tras el vencimiento de este, la relación arrendaticia continuó mediante tácita reconducción, manteniéndose las obligaciones esenciales previamente pactadas. Añadió que en el segundo contrato, el señor Curbelo Morán asumió nuevamente responsabilidad solidaria. Se opuso al argumento sobre la personalidad jurídica separada de ECD, al enfatizar que la responsabilidad impuesta surgía de su condición de accionista, sino porque aceptaron personalmente las obligaciones.

De otra parte, el apelado defendió la imposición de honorarios de abogado al sostener que la conducta de los apelantes constituyó temeridad. Señaló que estos negaron inicialmente la deuda y la responsabilidad solidaria, obligándolo a litigar innecesariamente, y que admitieron la cuantía adeudada pocos días antes del juicio. Finalmente, solicitó la imposición de costas y honorarios adicionales por entender que el recurso apelativo era frívolo y dilatorio.

**II.**

**A. Contratos**

Un contrato es un negocio jurídico bilateral en el que dos (2) o más partes manifiestan su consentimiento para crear, modificar o extinguir obligaciones. Artículo 1230 del Código Civil, *supra*, sec. 9751. La decisión de contratar o no y con quién es facultativa, siempre que no se ejerza de forma abusiva ni contra una disposición legal. Artículo 1232 del Código Civil, *supra*, sec. 9753. Asimismo, las

partes pueden pactar cualquier cláusula que no contravengan la ley, la moral o el orden público. *Íd.*

Una vez constituido, el contrato obliga a las partes a su cumplimiento y tiene fuerza de ley entre las partes, sus sucesores y terceros. Artículo 1233 del Código Civil, *supra*, sec. 9754; *UIA v. Santander Securities y otros*, 214 DPR 601 (2024); *Rosario Rosado v. Pagán Santiago*, 196 DPR 180 (2016); *PRFS v. Promoexport*, 187 DPR 42, 52 (2012); *BBPR v. Sunc. Talavera*, 174 DPR 686 (2008). Por ello, el incumplimiento con una obligación contractual puede conllevar el cumplimiento específico de lo pactado. *PRFS v. Promoexport, supra.*

Si el contrato no prevé alguna situación o alguna cláusula resulta ineficaz, se complementa con las normas imperativas o supletorias, los usos del lugar de celebración del contrato y la buena fe. Art. 1236 del Código Civil, *supra*, sec. 9757. Ahora bien, cuando sus términos son claros y específicos, se atiende el sentido literal de las palabras. Art. 354 del Código Civil, *supra*, sec. 6342; *Asoc. Res. Los Versalles v. Los Versailles*, 194 DPR 258, 267 (2015). Sin embargo, si el contrato requiere interpretación, se debe atender la intención de las partes al contratar conforme a la buena fe y las circunstancias del caso, incluyendo la conducta anterior, coetánea y posterior a la contratación. *Íd.*; *Suárez Figueroa v. Sabanera Real, Inc.*, 173 DPR 694, 711 (2008); *Municipio Mayagüez v. Lebrón*, 167 DPR 713 (2006); *Negrón Rivera y Bonilla Ex parte*, 120 DPR 61 (1987).

### B. Contrato de arrendamiento

En el contrato de arrendamiento, el arrendador se obliga a ceder temporalmente el uso y disfrute de un bien al arrendatario a cambio de un precio cierto. Art. 1331 del Código Civil, *supra*, sec. 10101. Su duración puede ser determinada o indeterminada. Art. 1332 del Código Civil, *supra*, sec. 10102. "Llegado el plazo convenido en el arrendamiento, este continúa en los mismos términos contratados hasta que cualquiera de las partes notifique a la otra su

voluntad de resolver el contrato." Art. 1335 del Código Civil, *supra,* sec. 10105. En este caso, cesan las obligaciones otorgadas por un tercero para garantizar el contrato principal. *Íd.*

Los comentaristas del Código Civil de 2020 señalaron que se derogó la figura de la tácita reconducción. Según el profesor Miguel Garay Aubán, aunque el título del Artículo 1335 del Código Civil, *supra,* sec. 10105, menciona "tácita reconducción", su texto establece que, al vencerse el contrato sin notificación de resolución, este continúa en los mismos términos, sin que se configure un nuevo contrato, lo cual es incompatible con dicha figura.[8] M. R. Garay Aubán, *Código Civil 2020 y su Historial Legislativo*, 2da. ed. San Juan, Ediciones SITUM, 2021, T. II, págs. 395-397. Sobre este particular, el memorial explicativo del borrador indicó:

> **La norma aquí adoptada destierra del ordenamiento nuestro la tácita reconducción. Una vez concluye el arrendamiento y el arrendatario permanece en la posesión del bien sin ningún requerimiento especial del arrendador, la relación contractual queda renovada en los mismos términos, y por tanto, no existen los plazos supletorios que aplican (Artículos 1467 y 1471) según la normativa del Código Civil de 1930.** La tácita reconducción no era ni una prórroga ni una renovación del contrato anterior, "sino un nuevo contrato, cuyo término no es la duplicidad del originalmente pactado, sino que tiene una duración más limitada [...] que se deriva de la naturaleza del objeto del contrato o del modo de devengarse la renta". [...] El texto adoptado expresa claramente la necesidad de efectuar un requerimiento resolutorio, es decir, que hay necesidad de realizar un acto afirmativo que anuncie la intención de resolver, aunque el anuncio no requiera formalidad especial. Se trata, pues, del mismo requisito que existía ya respecto de la "tácita reconducción": "No se exige una aquiescencia expresa del arrendador, pues la misma se deduce de la falta de requerimiento resolutorio (art. 1566 CC), aunque no se exige que el requerimiento resolutorio sea formal, bastando la

---

[8] El Artículo 1456 del Código Civil de 1930, 31 LPRA sec. 4063, (derogado), disponía que existía tácita reconducción cuando, al vencerse el contrato, el arrendatario permanecía por quince (15) días en la propiedad con la aquiescencia del arrendador, salvo que mediara requerimiento previo. La jurisprudencia estableció que la tácita reconducción no constituía una prórroga del contrato original, sino la creación de un contrato nuevo, ya que el arrendamiento original se extinguía al vencer su término. *SLG Ortiz-Mateo v. ELA*, 211 DPR 772, 797-798 (2023); *Vicar Builders v. ELA et al.,* 192 DPR 256, 261-262 (2015); *Dalmau v. Hernández Saldaña,* 103 DPR 487, 490 (1975). No obstante, al cumplirse los requisitos, surgía un nuevo contrato basado en la voluntad presunta de las partes. *Vicar Builders v. ELA et al., supra.* Este nuevo contrato mantenía las mismas condiciones del anterior, excepto el término, que se determinaba según la forma de pago: por años si el canon era anual, por meses si era mensual o por días si era diario. *Íd.*

falta de acuerdo tras unas conversaciones fallidas al término del arrendamiento. [...] *Íd.*, págs. 396-397.

En igual sentido, el profesor Félix Figueroa Cabán manifestó que el Código Civil de 2020 derogó la tácita reconducción. L. Muñiz Arguelles et al., *El Código Civil de Puerto Rico de 2020: Primeras Impresiones*, San Juan, Fideicomiso para la Escuela de Derecho de la Universidad de Puerto Rico, 2020, pág. 308. Ello, puesto que "de permanecer el arrendatario en posesión del bien sin requerimiento del arrendador, el contrato se renueva en los mismos términos del contrato original y[,] contrario a la tácita reconducción, no surge un contrato nuevo, con una duración más limitada". *Íd.*

### C. Novación

La novación constituye una causa de extinción de las obligaciones. *PDCM Assoc. v. Najul Bez*, 174 DPR 716 (2008). La novación consiste en sustituir una obligación previa por una nueva, lo que extingue la primera y crea un nuevo vínculo obligacional entre las partes. Art. 1182 del Código Civil, supra, sec. 9421; *CSMPR v. Carlo Marrero et als.,* 182 DPR 411 (2011); *Mun. de San Juan v. Prof. Research*, 171 DPR 219 (2007). Para que ello ocurra, debe declararse expresamente o existir incompatibilidad total entre ambas obligaciones. Art. 1184 del Código Civil, *supra,* sec. 9423. Así, la novación es un acto jurídico de doble función que extingue una obligación y da lugar a otra. *Mun. de San Juan v. Prof. Research,* 171 DPR 219 (2007), *citando a* J. Castán Tobeñas, *Derecho Civil Español Común y Foral*, 11va ed. Madrid, Reus S.A., 1988, T. III, pág. 429.

No obstante, por tratarse de una cuestión de intención, la novación no se presume. *United v. Villa*, 161 DPR 609 (2004). La voluntad novatoria o *animus novandi* —la intención de extinguir la obligación y sustituirla por otra— debe ser manifiesta. *Warner Lambert Co. v. Tribunal Superior,* 101 DPR 378 (1973).

Al aprobar el Código Civil de 2020, la Asamblea Legislativa adoptó la postura doctrinal que reconoce únicamente la novación extintiva y descartó la novación modificativa, la cual ocurría cuando no existía intención de extinguir la obligación original o cuando ambas obligaciones eran compatibles. Véase Exposición de Motivos de la Ley Núm. 55-2020, *supra.*

### D. Responsabilidad solidaria

Las obligaciones con pluralidad de sujetos pueden ser mancomunadas o solidarias. *Otero Rivera v. USAA Fed. Savs. Bank,* 214 DPR 473 (2024); *Pérez et al. v. Lares Medical et al.,* 207 DPR 965 (2021); *Quílez-Velar et al. v. Ox Bodies, Inc.,* 198 DPR 1079 (2017); *Maldonado Rivera v. Suárez y otros,* 195 DPR 182 (2016); *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365 (2012). En las mancomunadas, la deuda es divisible y cada deudor responde solo por su parte. *Íd.* En las solidarias, la deuda se considera indivisible y cada deudor responde por la totalidad frente al acreedor, de modo que el pago de uno extingue la obligación para todos. *Íd.*; véase Arts. 1096 y 1102 del Código Civil, *supra,* secs. 9055 y 9061.

La concurrencia de varios deudores en una obligación no implica que todos respondan por la totalidad de la deuda. *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra.* En el ámbito contractual, la responsabilidad se presume mancomunada, salvo que las partes pacten expresamente la solidaridad. *Íd.*; *Otero Rivera v. USAA Fed. Savs. Bank, supra; Pérez et al. v. Lares Medical et al., supra; Maldonado Rivera v. Suárez y otros, supra*; *Pauneto Rivera v. Núñez Borges,* 115 DPR 591 (1984). Pues, en materia contractual, las partes pueden definir el alcance de su relación jurídica, por lo que cualquier extensión de responsabilidad debe establecerse de forma clara y expresa. *Maldonado Rivera v. Suárez y otros, supra.* Esto responde a que la solidaridad implica una obligación frente al acreedor, aunque luego los deudores puedan distribuir entre sí la responsabilidad en

una acción de nivelación. *Íd.; Pérez et al. v. Lares Medical et al., supra*; *Quílez-Velar et al. v. Ox Bodies, Inc., supra*; Art. 1103 del Código Civil, *supra*, sec. 9062.

Ahora bien, existe una distinción entre la solidaridad propia e impropia. *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra*. La solidaridad propia o perfecta surge de la ley o del acuerdo entre las partes, mientras que la impropia o *in solidum* se origina en la responsabilidad extracontractual cuando varias personas ocasionan un daño. *Íd.* En la solidaridad propia, cada deudor responde frente al acreedor por la totalidad de la deuda. *Íd.*

### E. Sociedad Legal de Bienes Gananciales

El emplazamiento es el mecanismo procesal mediante el cual el tribunal adquiere jurisdicción sobre la persona demandada, de modo que esta quede obligada por la determinación judicial que eventualmente se dicte. *Torres Zayas v. Montano Gómez et als.*, 199 DPR 458 (2017). Además, constituye un elemento esencial del debido proceso de ley, puesto que su propósito principal es notificar al demandado sobre la existencia de una acción judicial en su contra. *Íd.* La falta de un emplazamiento adecuado priva al tribunal de jurisdicción sobre la persona del demandado y provoca la nulidad radical de cualquier dictamen por imperativo constitucional. *Íd.*

Respecto a la forma correcta para emplazar a una SLG, en *Torres Zayas v. Montano Gómez et als.*, *supra*, el Tribunal Supremo estableció que se requiere que se emplace individualmente a cada uno de los cónyuges **por sí y en representación de la sociedad legal de gananciales que estos constituyen**. De este modo, la norma vigente requiere expresamente el emplazamiento de ambos cónyuges cuando se demanda a la SLG, por sí y en representación de esta.

Por ello, para poder reclamar una deuda de carácter ganancial, el acreedor debe dirigirse contra los bienes gananciales, demandando a la SLG y notificando a ambos componentes de dicha sociedad. J. A.

Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., 2012, Colombia, Nomos, 2012, págs. 69-71.

Lo anterior responde a la naturaleza jurídica de la SLG, el cual es el régimen económico que, como norma general, rige el matrimonio en Puerto Rico. *Torres Zayas v. Montano Gómez et als., supra*; *SLG Báez-Casanova v. Fernández et al.*, 193 DPR 192 (2015). Bajo este régimen, ambos cónyuges son codueños y administradores del patrimonio ganancial, sin que existan cuotas específicas sobre los bienes que lo componen, los cuales pertenecen a ambos. *Íd.*

Asimismo, la SLG posee personalidad jurídica propia y separada de la de los cónyuges, sin absorber su personalidad individual. *Íd.* Por ello, existe separación entre el patrimonio personal de cada cónyuge y el patrimonio ganancial, lo que impide presumir solidaridad entre los cónyuges o entre estos y la sociedad. *Pauneto Rivera v. Núñez Borges, supra.*

Aunque las deudas contraídas durante el matrimonio se presumen en beneficio de la sociedad, dicha presunción es rebatible y no implica responsabilidad solidaria automática. *Íd.* No obstante, el Artículo 520 del Código Civil, *supra*, sec. 6981, dispone que constituyen responsabilidad primaria de la sociedad las cargas y gastos derivados, entre otros, de la explotación de empresas comunes, el ejercicio de la profesión u oficio de cualquiera de los cónyuges y las deudas contraídas durante su vigencia. Así, la SLG responde frente a terceros, tanto en el ámbito contractual como civil, por las obligaciones generadas por cualquiera de los cónyuges en la administración de los bienes comunes o como consecuencia de sus actos frente a terceros. Garay Aubán, *op. cit.*, págs. 135-136.

### F. Temeridad

Por otra parte, el inciso (d) de la Regla 44.1 de Procedimiento Civil, *supra*, R. 44.1 (d), faculta al TPI a imponer honorarios de abogado cuando una parte procedió con temeridad durante el litigio.

*Pereira v. IBEC*, 95 DPR 28 (1967). La temeridad se define como una conducta terca, obstinada, contumaz y carente de fundamento que obliga a la parte contraria a asumir los gastos y el esfuerzo de un litigio que pudo evitarse o que se prolongó innecesariamente. *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010); *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008). Ello, salvo que la controversia implique una cuestión de derecho novedosa. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. ed., LexisNexis, San Juan, 2017, pág. 437. Empero, el hecho de que un asunto no se haya planteado previamente no implica falta de temeridad si la ley aplicable es clara. J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Publicaciones JTS, 2011, T. IV, pág. 1312.

El propósito de esta sanción es desalentar litigios infundados y promover la resolución de controversias, mediante un mecanismo que compense a la parte prevaleciente por los perjuicios económicos y las cargas generadas por la actitud irrazonable de su contraparte. *Marrero Rosado v. Marrero Rosado, supra*. Además, castiga a quien, por su actitud inflexible, obliga a la otra a incurrir en los inconvenientes de un pleito. *COPR v. SPU*, 181 DPR 299 (2011). La determinación de temeridad recae en la sana discreción del juzgador, sujeta a revisión apelativa en caso de abuso de discreción. *Íd.*

### III.

En el presente caso, los apelantes imputaron al TPI dos (2) errores. Primero, sostuvieron que dicho foro erró al aplicar el Artículo 520(e) del Código Civil de Puerto Rico, *supra*, sec. 6981, y, en consecuencia, al imponer responsabilidad solidaria al señor Curbelo Morán y a la señora Durán Rosa, junto a ECD por la suma concedida. Segundo, adujeron que el TPI incidió al condenarlos solidariamente al pago de $3,000.00 en honorarios de abogado, más los intereses

legales correspondientes, a pesar de no concurrir circunstancias que justificaran tal partida.

A la luz de estos señalamientos, surge del expediente que el 13 de agosto de 2015, las partes suscribieron un primer contrato de arrendamiento con vigencia desde el 1 de septiembre de 2015 hasta el 31 de agosto de 2020. En dicho contrato se estableció expresamente que:

> "DE LA SEGUNDA PARTE: EMPRESAS CURBELO DURÁN, INC. [...] representado por su presidente, Isaac Curbelo y su vice presidenta, Janiushka Durán, ambos mayores de edad, casados entre sí y vecinos de Hatillo, Puerto Rico, quienes afirman estar debidamente facultados para suscribir este acuerdo y quienes se obligan solidariamente al fiel cumplimiento de los términos y condiciones de este contrato..."

En vista del contenido de esta cláusula, resulta evidente que, en el primer contrato, tanto el señor Curbelo Morán como la señora Durán Rosa comparecieron en su carácter personal y asumieron expresamente responsabilidad solidaria junto a ECD. Es menester resaltar que la solidaridad en materia contractual no se presume, sino que debe surgir de forma clara e inequívoca del texto del acuerdo. El texto transcrito anteriormente no deja margen a dudas en cuanto a la intención de las partes de obligarse solidariamente. En consecuencia, no existe controversia respecto a que, bajo el primer contrato, tanto el señor Curbelo Morán como la señora Durán Rosa asumieron responsabilidad solidaria en su carácter personal.

Ahora bien, tras el vencimiento del contrato el 31 de agosto de 2020, la corporación arrendataria permaneció en la posesión del inmueble hasta el 1 de agosto de 2023. Este período reviste particular importancia jurídica, toda vez que transcurrió bajo la vigencia del Código Civil de Puerto Rico de 2020, *supra*, mediante el cual la figura tradicional de la tácita reconducción perdió vigencia. Conforme al Artículo 1335 del Código Civil, *supra*, sec. 10105, vencido el término del arrendamiento, el contrato continúa en los mismos términos hasta tanto alguna de las partes manifieste su intención de resolverlo.

Así las cosas, la permanencia de ECD en el inmueble no dio lugar a la configuración de un contrato nuevo, sino a la continuación del vínculo obligacional previamente establecido. En ese sentido, la relación contractual existente entre los años 2020 y 2023 constituyó una extensión del contrato original, manteniéndose inalteradas las condiciones previamente pactadas.

Este análisis resulta determinante en la controversia relativa a la novación. Como es sabido, la novación requiere una intención clara e inequívoca de extinguir la obligación anterior y sustituirla por una nueva, lo cual no se presume. En el caso de autos, no obra en el expediente evidencia que denote la existencia de una voluntad novatoria durante el período comprendido entre los años 2020 y 2023. Por el contrario, la permanencia en la posesión del inmueble bajo las mismas condiciones contractuales reflejó la intención de mantener vigente el vínculo obligacional previamente establecido. Así, no puede concluirse que mediara novación alguna.

Posteriormente, el 18 de julio de 2023, las partes otorgaron un segundo contrato de arrendamiento en el cual se dispuso lo siguiente:

> "DE LA SEGUNDA PARTE: EMPRESAS CURBELO [DURÁN], INC, [...] representado por su presidente, Isaac Curbelo, mayor de edad, casado y vecino de Hatillo, Puerto Rico, quien afirma estar debidamente facultado para suscribir este acuerdo y se obliga solidariamente al fiel cumplimiento de los términos y condiciones de este contrato..."

De una lectura sosegada de ambas disposiciones contractuales surge con claridad que mientras en el primer contrato comparecieron tanto el señor Curbelo Morán como la señora Durán Rosa y asumieron responsabilidad solidaria, en el segundo acuerdo únicamente compareció el señor Curbelo Morán, sin la intervención de la señora Durán Rosa. Este hecho resulta determinante, pues evidencia que esta última no asumió obligación alguna respecto al segundo contrato.

Por consiguiente al no surgir del segundo acuerdo una manifestación expresa de la señora Durán Rosa obligándose solidariamente, resulta jurídicamente improcedente extenderle responsabilidad por las obligaciones derivadas de dicho contrato. Es menester evocar que la solidaridad no puede inferirse ni presumirse, sino que debe pactarse expresamente.

Por otra parte, el foro primario también incidió al imputar responsabilidad a la SLG sin que esta hubiese sido debidamente traída al pleito. Es norma reiterada que el emplazamiento constituye el mecanismo mediante el cual el tribunal adquiere jurisdicción sobre la persona. En el presente caso, el expediente refleja que la SLG no fue demandada, emplazada, ni compareció voluntariamente ante el tribunal.

La ausencia de emplazamiento adecuado, conforme fuera establecido por el Tribunal Supremo en *Torres Zayas v. Montano Gómez, supra*, privó al tribunal de instancia de jurisdicción sobre dicha entidad, lo cual acarrea la nulidad de cualquier determinación emitida en su contra. En consecuencia, el TPI no podía imputar responsabilidad a la SLG respecto a la deuda objeto de este caso.

A tenor de lo anterior, tampoco procede la imposición de honorarios de abogado por temeridad. La temeridad se configura cuando una parte incurre en una conducta terca, obstinada o carente de fundamento que obligue innecesariamente a la parte contraria a litigar. No obstante, del examen del expediente no se desprende que los apelantes hayan incurrido en una conducta de tal naturaleza. Por el contrario, estos plantearon defensas jurídicas legítimas relativas a la responsabilidad solidaria y la interpretación de los contratos de arrendamiento. Así, no puede concluirse que los apelantes actuaran con obstinación o temeridad, sino que ejercieron su derecho a litigar asuntos sustanciales de hecho y de derecho. En ausencia de

conducta temeraria que justifique la imposición de honorarios, el foro primario abusó de su discreción al conceder dicha partida.

En vista de lo anterior, y tras examinar el expediente en su totalidad, resulta forzoso concluir que el foro recurrido incidió al imponer responsabilidad solidaria a la SLG por la totalidad de la deuda, a la señora Durán Rosa respecto al segundo contrato, y al determinar que la relación contractual continuó mediante tácita reconducción. En vista de lo anterior, procede también revocar la imposición de honorarios de abogado por temeridad. Por consiguiente, procede modificar la *Sentencia* apelada.

**IV.**

Por los fundamentos que anteceden, se modifica la *Sentencia* apelada, a los efectos de: (1) relevar a la SLG de responsabilidad, (2) relevar a la señora Durán Rosa de responsabilidad respecto al segundo contrato y (3) eliminar la determinación de temeridad y la consecuente imposición de honorarios de abogado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones